[Cite as *State v. Lynn*, 2011-Ohio-6404.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.    11 BE 18 |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| - VS - | ) | O P I N I O N |
| | ) | |
| MICHAEL ANTHONY LYNN, | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from Common Pleas
                                                      Court, Case No. 10CR15.

JUDGMENT:                                Affirmed.


APPEARANCES:
For Plaintiff-Appellant:                 Attorney Chris Berhalter
                                                      Prosecuting Attorney
                                                      Attorney Daniel Fry
                                                      Assistant Prosecuting Attorney
                                                      147-A West Main Street
                                                      St. Clairsville, Ohio  43950

For Defendant-Appellee:                Attorney Timothy Young
                                                      Ohio Public Defender
                                                      Attorney Katherine Szudy
                                                      Assistant State Public Defender
                                                      250 East Broad Street, Suite 1400
                                                      Columbus, Ohio  43215


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro

                                                      Dated:  December 7, 2011

VUKOVICH, J.

¶{1} Plaintiff-appellant State of Ohio appeals the decision of the Belmont County Common Pleas Court granting defendant-appellee Michael Anthony Lynn's motion to suppress his confession. The trial court suppressed the confession because it found that the confession was not made with a full comprehension of the legal concept involved in a waiver of the right to remain silent. The state is of the position that the trial court's decision is not supported by substantial credible evidence. For the reasons expressed below, given our deferential review of a trial court's position on credibility of the evidence, the judgment of the trial court is hereby affirmed.

STATEMENT OF THE CASE

¶{2} On February 3, 2010, Lynn was indicted for having sexual conduct with a child in violation of R.C. 2907.02(A)(1)(b), a third-degree felony. Lynn pled not guilty to the offense.

¶{3} In April 2010, he filed a three part motion. The motion asserted he was not competent to stand trial, that the confession was involuntary, and that the victim was incompetent to testify at trial. As to the first branch of the motion, in May 2010, the trial court found Lynn to be incompetent to stand trial and ordered him to be committed to Appalachian Behavioral Healthcare.

¶{4} His competency was later restored in mid September 2010, and the court then proceeded to determine the second branch of the April 2010 Motion. Dr. Kristen E. Haskins was appointed by the court to examine Lynn to determine whether he was capable of making a knowing, intelligent, and voluntary waiver of his *Miranda* rights and whether his statements to the investigator were voluntary (term used in the context of forensic psychology and criminal law practice). 09/30/10 J.E. Dr. Haskins interviewed Lynn on two separate occasions and issued a report. Her testimony and report was introduced at a suppression hearing. Following the hearing, the trial court sustained the motion finding that "the police examiner was unaware of defendant's multiple mental handicaps and that as a consequence of these handicaps, the defendant did not fully comprehend the legal concept involved in a waiver of the right

to remain silent." 04/28/11 J.E. Thus, the statements were suppressed. The state immediately appealed that decision and filed a certification pursuant to Crim.R. 12(K).

ASSIGNMENT OF ERROR

**¶{5}** "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN SUPPRESSING APPELLEE'S CONFESSION PRIOR TO TRIAL."

**¶{6}** Appellate review of a suppression decision presents a mixed question of law and fact. *State v. Roberts,* 110 Ohio St .3d 71, 2006–Ohio–3665, ¶100. On factual matters, the trial court occupies the best position to evaluate the credibility of witnesses and weigh the evidence. Id*.,* citing *State v. Mills* (1992), 62 Ohio St.3d 357, 366. Thus, factual findings are accorded great deference. Id*.,* citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 20. The trial court's legal conclusions are reviewed de novo. Id*.,* citing *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, ¶8.

**¶{7}** The first paragraph of the state's argument as to why the suppression ruling was incorrect provides:

**¶{8}** "The record before the Court contains absolutely no new evidence that Appellee's 'will was overborne or that his capacity for self-determination was critically impaired because of coercive police conduct during his <u>non-custodial</u> interrogation on November 27, 2009. The trial court erred in making its finding that the Appellees confession to the crime of Rape was involuntary. It is not supported by substantial credible evidence." (Underlining in Original).

**¶{9}** The state's use of an underline draws this court's attention to its position that the interview was a non-custodial interrogation and, as such, *Miranda* rights were not required to be given and waived. The problem with this position is that the state never made this argument to the trial court as a reason why the motion to suppress should be overruled. Rather, at the suppression hearing, the state's position was that the confession was made knowingly, voluntarily and intelligently and thus, there was no basis for suppression. Since the argument about whether or not the interview was custodial or noncustodial was not asserted, it cannot be raised for the first time on appeal. *State v. Hoffner*, 5th Dist. No. 2009 CA 00251, 2010-Ohio-3128, ¶14, citing *State v. Williams* (1977), 51 Ohio St.2d 112, paragraph one of the syllabus, overruled on other grounds (1988), 49 Ohio St.3d 226. Thus, the argument is waived.

**¶{10}** The state is also asserting that the trial court suppressed the confession because it found that the confession was involuntarily made. This is not an accurate description of the trial court's ruling. The trial court's decision was that the confession was suppressed because Lynn "did not fully **comprehend** the legal concept involved in a waiver of the right to remain silent." 04/28/11 J.E. (Emphasis added). Not fully comprehending the right to remain silent is a statement that the right was not intelligently waived. To comprehend a right is to understand the right. If you do not understand the right, the right cannot be intelligently waived. Thus, the finding deals with whether the waiver was intelligently made, not whether it was voluntary.

**¶{11}** The test used by the state "was overborne or that his capacity for self-determination was critically impaired because of coercive police conduct" comes from the United States Supreme Court in *Colorado v. Connelly* (1986)*, 479 U.S. 157 and its progeny. In *Connelly*, the Court was asked to decide whether a confession was involuntary based on the offender's deficient mental condition. The Court held that the defendant's mental condition is a significant factor in the voluntariness calculus, but that alone is not sufficient to conclude that the waiver was not voluntary. Police coercion is a necessary element in finding involuntariness of the waiver. Id. at 164-167.

**¶{12}** *Connelly* and its progeny, however, are inapplicable because the trial court did not make a finding on voluntariness of the waiver. *Connelly* only dealt with whether the waiver was voluntary, not if it was intelligent and knowing. Police coercion is only necessary to find that the waiver of *Miranda* rights was not voluntary; it is not needed to find that the waiver was not knowingly and/or intelligently made. See *State v. McFarland*, 2d Dist. No. 23411, 2010-Ohio-2395, ¶24-25 (analyzing knowing and intelligent waiver of *Miranda* separately from the voluntariness of the waiver and only addressing police coercion during the analysis of the voluntariness); *State v. Chester*, 10th Dist 08AP-1, 2008-Ohio-6679, ¶20-21 (same). See, also, *State v. Barnum* (Kan.App. 2007), 168 P.3d 67 (stating, "the primary legal issue in *Connelly* was the *voluntariness* of the defendant's confession. The Court held that evidence of police coercion is necessary to find that a confession is involuntary. However, where the evidence shows, as in Barnum's case, that the defendant did not knowingly and

intelligently waive his *Miranda* rights, the confession can be suppressed by the district court even in the absence of coercive police activity."). As such, in our review of whether the trial court's decision is supported by credible evidence, we do not need to find credible evidence of police coercion.

¶{13} We now turn our analysis to whether the trial court's finding that Lynn did not intelligently waive his *Miranda* rights is supported by competent credible evidence. The United State Supreme Court has stated that the totality-of-the-circumstances approach is adequate to determine whether there has been a waiver of *Miranda* rights. *Fare v. Michael C.* (1979), 442 U.S. 707, 725. The totality approach requires inquiry into all the circumstances surrounding the interrogation. Id. This includes evaluation of age, experience, education, background, intelligence, and whether the offender has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights. Id.

¶{14} Thus, an individual's low intellect does not necessarily render him or her incapable of waiving *Miranda* rights. *See State v. Jenkins* (1984)*, 15 Ohio St.3d 164, 233; *State v. Hall* (1976)*, 48 Ohio St.2d 325, 333. Rather, a person's low intellect is but one of many factors under the totality of circumstances that a court must consider in assessing the voluntariness of a *Miranda* waiver or confession. *State v. Frazier* (2007)*, 115 Ohio St.3d 139, 154.

¶{15} It is the government's burden to prove that the statements made were not obtained in violation of the offender's *Miranda* rights. *United States v. Reese* (N.D.Ohio 2010), 1:09 CR 00145, 2010 WL 3730148, citing *Miranda v. Arizona* (1966)*, 384 U.S. 436, 475 and *Connelly,* 479 U.S. at 168. "The knowing, intelligent and voluntary waiver of those rights must be proven by a preponderance of the evidence." *Connelly,* supra at 168.

¶{16} In the motion to suppress, Lynn requested an examination using Thomas Grisso's Instruments for Assessing Understanding & Appreciation of *Miranda* Rights. This test is commonly referred to as the Grisso test and as the name suggests it is only used to determine whether a defendant understands the *Miranda* Rights. The court appointed Dr. Kristen E. Haskins to examine Lynn.

¶{17} There are not many cases in Ohio addressing whether a waiver is intelligently made. One case from the Eleventh Appellate District upheld the trial court's denial of a suppression motion where the offender's IQ was 79, only completed the 8th grade, was 32 years old at the time of the offense and was fully able to explain his *Miranda* rights. *State v. Bumgardner*, 11th Dist. No. 2007-T-0016, 2008-Ohio-1778, ¶39. There was an expert who offered his opinion as to why the offender did not have a full understanding of the rights, however, the trial court did not find that opinion credible and offered the following analysis as to why:

¶{18} "First, the Defendant could not wait to give his self serving explanations to Dr. Fabian of why a particular right did not apply to his situation. It therefore appears to the Court that the Defendant not only has a basic understanding of the law as it applies to him but he is well aware of the consequences of his failure to exercise his rights to remain silent and have a lawyer present. Secondly, the Defendant presently has an outstanding understanding of his *Miranda* rights as this Court could not imagine a better explanation of those rights and the meaning of them particularly when we are talking about an individual that has an eighth grade education and an I.Q. that suggests borderline verbal intelligence. It therefore becomes even more difficult for this Court to give credit to Dr. Fabian's testimony that, in his opinion, the Defendant would not have a significant ability at the time of questioning to fully appreciate his right to remain silent due to his suggestibility in an interrogation setting." Id. at ¶52.

¶{19} The Sixth Circuit has also reviewed the intelligent waiver issue in the context of a habeas corpus petition. *Garner v. Mitchell* (2009), 557 F.3d 257. It concluded that an examination using the Grisso test years after the police interrogation that concluded that the offender may not have understood his *Miranda* warnings did not result in a conclusion that the confession was not intelligently made. Id. Garner was 19 years old at the time of the waiver, had an IQ of 76, and poor education. Id. at 263. The court stated that Garner's conduct, speech and appearance at the time of the interrogation indicated that his waiver was knowing and intelligent, notwithstanding his diminished mental capacity. Id. at 266. Garner had invented a story about having a fight with his girlfriend to explain to the taxicab driver why he was removing items from the victim's (who was not his girlfriend) apartment and he also admitted to the

police that the reason he set the couch on fire was to destroy any fingerprints left behind. Thus, the court stated that Garner engaged in conduct prior to being arrested that was "more consistent with a person attempting to avoid being caught than a person who did not know what he was doing." Id. Thus, the court concluded that Garner did not have relief through habeas corpus because his conduct during and leading up to the interrogation indicated that he understood and appreciated his *Miranda* rights before executing the waiver, despite the experts indication that he may not have understood those rights. Id. at 270.

¶{20} There was a dissent to that opinion. The dissent cites to a number of cases where a low IQ coupled with other factors provided a basis to find that the waiver was not intelligently made. Id. at 280-281. For instance, in one case, the offender's IQ was borderline retarded and he had difficulty understanding English (his primary language was Spanish). *U.S. v. Garibay* (C.A.9, 1998), 143 F.3d 534. In another case, two teenagers, who where 15 and 16 years old at the time they were taken into custody who had no previous experience with the criminal process and whose IQs were in the low 60's were deemed to have not intelligently waived their *Miranda* rights. *Cooper v. Griffin* (C.A.5, 1972), 455 F.2d 1142. In another case, it was found that an offender with an IQ of 71 who read at a second grade reading level did not intelligently waive the *Miranda* rights. *U.S. v. Aikens* (C.A.D.C.1998), 13 F. Supp.2d 28. As to the right to remain silent, the offender in Aikens stated that meant "you can't talk unless they ask you a question." Id.

¶{21} Likewise, we note that other states have ruled on whether a *Miranda* rights waiver was intelligently made. An Illinois appellate court provides a good explanation of what is needed for an intelligent waiver:

¶{22} "If intelligent knowledge in the *Miranda* context means anything, it means the ability to understand the very words used in the warnings. It need not mean the ability to understand far-reaching legal and strategic effects of waiving one's rights, or to appreciate how widely or deeply an interrogation may probe, or to withstand the influence of stress or fancy; but to waive rights intelligently and knowingly, one must at least understand basically what those rights encompass and minimally what their waiver will entail." *People v. Bernasco* (1990), 138 Ill.2d 349, 363-64.

¶{23} In this case, Dr. Haskins was the only witness at the suppression hearing. In addition to testifying, she also submitted a report to the court and submitted an answer to a written hypothetical submitted to her based on the facts of this case.

¶{24} Dr. Haskins interviewed Lynn for a total of seven and half hours. During that time she administered the Wechsler Adult Intelligence Scale (IQ test), the Wide Range Achievement Test, Validity Indicator Profile, and the Structured Interview of Reported Symptoms. The IQ test indicated that Lynn's IQ was 73, which is in the borderline range (his full scale IQ was better than approximately 4 out of 100 individuals in his age group). Borderline Range is that range just above mild mental retardation and just below low average. (Dr. Haskins Report pg. 25). The Wide Range Achievement Test indicated that on Word Reading Lynn had some decoding problems and his level in this area was equivalent to a 4.9 grade level. However, on Sentence Comprehension his grade equivalent would be 9.2 grade level. This indicated that he was able to figure out the meaning of words when used in context. The Validity Indicator test indicated that the results of the tests were a valid representation of Lynn's ability. The Structured Interview of Reported Symptoms did not suggest a blatant malingering of any mental illness. Rather, it suggested that Lynn was prone to perhaps exaggerate the everyday problems he experiences.

¶{25} Following those tests, Dr. Haskins administered the Grisso Test. It is a four part test and following it, Dr. Haskins concluded that Lynn did not "fully understand the irrevocable nature of the right to remain silent." (Dr. Haskins Report pg. 28). At the suppression hearing, she specifically stated that to a reasonable degree of psychological certainty that she did not believe Lynn intelligently waived his rights. She explained:

¶{26} "What impressed me as I did this evaluation was in each way I look at his waiver, whether it was asking him to read and tell me about the Belmont County waiver, to give me the definitions there; to look at the Grisso instruments. Each thing I did with him, I was struck with the continuity with which he did not appreciate his right to silence, and the meaning of that. And he did not fully appreciate his right to counsel and what that meant. In other words, what an attorney was and why an attorney was

important, as well as that giving a statement, waiving his rights, that he had a right not to tell on himself; that he appreciated that he did not have to do that. And consistently, I found that he did not appreciate that aspect of the *Miranda*.

¶{27} "* * *

¶{28} "A. I think initially what he talked about was that both his attorney and his father told him that he should have never have said anything and that he should have just walked out, but the more I looked at it, each thing I did with him, consistently there was this failure to really understand and appreciate why you don't want to give that statement. Why you did not want to waive your rights and why you did not want to tell the police what happened." (Tr. 31-32).

¶{29} She then concluded that Lynn did not intelligently waive his right to remain silent. The Court questioned her on this finding and the following dialog occurred:

¶{30} "THE COURT: Just a minute. I saw something I wanted to follow-up on.

¶{31} "THE WITNESS: Sure.

¶{32} "THE COURT: You have the right to remain silent was interpreted as you aren't supposed to talk. Did you understand the reasoning in that interpretation?

¶{33} "THE WITNESS: You're not supposed to talk usually until you're talked to, is how that usually comes out. I think that may have been miss – it's what I often hear in people who don't understand.

¶{34} "THE COURT: Okay. And so at that point, he was silent, when he thought it meant you aren't supposed to talk?

¶{35} "THE WITNESS: Until asked to talk.

¶{36} "THE COURT: Okay. And then other things elicited discussion?

¶{37} "THE WITNESS: Yes. He felt he had to talk then.

¶{38} "THE COURT: Okay. I think I understand what you're saying. Okay." (Tr. 50-51).

¶{39} In the report, when explaining the Grisso test results, as to the right to remain silent, Dr. Haskins provided the following analysis:

¶{40} "The final section relates to the significant of the right to silence. Here, Mr. Lynn had a score of 4 out of 10. He thought if he did not want to talk [to] the

police, but the police told him he had to talk that what would happen was 'can get him in trouble.' Mr. Lynn thought if a suspect decided not to talk the most important thing the police are supposed to do was 'keep badgering him until he talks.' He also thought if he didn't want to talk to the police, but the police told him he had to talk what should happen was 'he will talk.' * * * When asked if the judge found out the person wouldn't talk to the police then what should happen, Mr. Lynn was not sure, but he thought 'try to find out what went on.' He then, finally, when asked if he did not tell the police anything about what he did and in court he was told to talk about what he did wrong what would he have to do he said 'he would have to talk because it was ordered to do so.' Thus, Mr. Lynn demonstrated some real weaknesses in his ability to understand the function of his right to silence related to his legal case." (Dr. Haskins Report pg. 20).

¶{41} In her report she further added, "When I asked him [Mr. Lynn] specifically about why he waived his rights, it became clear Mr. Lynn really did not understand he had a right not to tell on himself." (Dr. Haskins Report pg. 22).

¶{42} The record does show that Lynn has a borderline IQ and that he thought the right to remain silent meant to be quiet unless you were asked a question. Unlike some of the above cited cases that found that there was an understanding of *Miranda* and found as such because of conduct that occurred prior to and during the interrogation, there was not such an indication in this case. Prior to the interrogation, there is no evidence that Lynn made any statement to anyone trying to explain away the allegation that he engaged in sexual conduct with the victim.

¶{43} That said, we must acknowledge that while the offender's IQ is borderline, he was twenty-five years old at the time of the interrogation, he had completed high school and he had two other experiences with the judicial system. He previously had been charged with corruption of a minor, which was dismissed. In October 2006, he was convicted of possession of drug paraphernalia. Furthermore, the waiver he was given was within his reading level. Also, in doing the Grisso test, some of the words he had trouble understanding, like interrogation and consult, were not used in the waiver he was read. Yet, the expert did say that it is unclear whether

he read the waiver himself and that having it read to him would be harder for him to understand than him reading it for himself.

¶{44} The trial court found the expert's opinion to be credible. As discussed above there are factors that support the conclusion that Lynn did not intelligently waive his right to remain silent. Where there is evidence to support suppression and evidence to deny suppression, an appellate court will overwhelmingly affirm a trial court's decision due to the great deference that it must be given in matters of credibility.

¶{45} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Donofrio, J., concurs.
DeGenaro, J., concurs.