[Cite as *State v. Higgins*, 2013-Ohio-2555.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO.    12 JE 11 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| MARK HIGGINS, JR., | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:     Criminal Appeal from Common Pleas
                              Court, Case No. 11CR59.


JUDGMENT:                     Affirmed.


APPEARANCES:
For Plaintiff-Appellee:       Attorney Jane Hanlin
                              Prosecuting Attorney
                              Attorney Jeffrey Bruzzese
                              Assistant Prosecuting Attorney
                              16001 State Route 7
                              Steubenville, Ohio  43952

For Defendant-Appellant:      Attorney Francesca Carinci
                              Suite 904-911, Sinclair Building
                              Steubenville, Ohio  43952


JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro


                              Dated:  June 17, 2013

VUKOVICH, J.


**{¶1}** Defendant-appellant Mark Higgins, Jr. appeals from his conviction and sentence rendered in the Jefferson County Common Pleas Court for two counts of rape of a child under the age of 13, in violation of R.C. 2907.02(A)(1)(b). Three issues are presented in this appeal. The first two concern whether the state proved essential elements of the crimes. Specifically, whether the state proved when and where the rapes occurred and whether the state proved the element of penetration. The third issue is whether the trial court's suppression ruling was correct. Specifically, did the trial court abuse its discretion when it found that Higgins intelligently waived his *Miranda* rights, which resulted in the denial of his motion to suppress his confession?

**{¶2}** For the reasons discussed below, all arguments lack merit. The judgment of the trial court is affirmed.

Statement of Facts and Case

**{¶3}** On April 25, 2011, A.V., the victim's sister, walked into the garage of her mother's house and saw Higgins and the victim with their pants down and Higgins finger in the victim's vagina. Trial Tr. 337. The victim was 8 years old at the time. A.V. and the victim then left the garage and A.V. contacted her mother and father.

**{¶4}** The victim was then taken to Martins Ferry East Ohio Regional Hospital where a rape kit was performed. After the nurses and doctor's observations were documented, the Jefferson County Sheriff's Department was called and a complaint was filed. Higgins was arrested the next day.

**{¶5}** Following the arrest and booking, Higgins was interrogated by Sheriff Abdalla, Jefferson County's Sheriff. Prior to giving a statement, Higgins was read his *Miranda* rights and orally waived those rights. During this interrogation, Higgins admitted to vaginal penetration and that the victim performed oral sex on him on April 25, 2011. He also admitted to a prior occurrence of oral and vaginal sex that occurred within the previous week. Higgins was then asked to give a written statement, which he agreed to do. However, prior to that, he was given a written

document titled "Your Rights," which listed the *Miranda* rights. After each right, the questionnaire asks if the person understands. Higgins responded by writing "yes." The last question on the form is "Having these rights in mind, do wish to talk to us now?" Higgins wrote "Yes." Higgins then proceeded to write a written statement with the help of the Sheriff.

{¶6} On June 1, 2011, Higgins was indicted by the Jefferson County Grand Jury for two counts of rape, in violation of R.C. 2907.02(A)(1)(b). The indictments specified that Higgins engaged in sexual conduct with the victim, who was under the age of ten, on April 25, 2011 and "on or about April 17 through April 20, 2011." The Bill of Particulars further provided that the sexual conduct in counts one and two of the indictment was for oral and vaginal sex. 06/21/11 Bill of Particulars.

{¶7} Following the indictment, two evaluations were ordered. The first was a competency and sanity evaluation. Although Higgins was found to have a lower than average range of intellectual functioning, he was deemed to be sane and competent to stand trial. The second was performed to evaluate Higgins' ability to waive his *Miranda* rights. Dr. Kristen Haskins administered this evaluation and opined that Higgins did not intelligently waive his *Miranda* rights.

{¶8} Thereafter, based on Dr. Haskins' report and the video of the interrogation with Sheriff Abdalla, Higgins filed a motion to suppress his confession. Following a suppression hearing, the trial court overruled the motion.

{¶9} The case then proceeded to a jury trial. A jury returned a guilty verdict on both counts of the indictment. Higgins was sentenced to two concurrent life sentences without the possibility of parole.

{¶10} Higgins timely appeals his conviction and sentence.

<u>First Assignment of Error</u>

{¶11} "The State of Ohio failed to meet its burden in establishing an essential element of the crime, namely, during the testimony of the victim it was never established that the events occurred in the State of Ohio County of Jefferson on the date and place as alleged."

**{¶12}** Higgins argues that the state failed to prove both subject matter jurisdiction and venue. Specifically, he asserts that the state not only failed to prove that the rapes occurred in Ohio, but it also failed to prove that it occurred in Jefferson County.

**{¶13}** The State of Ohio has subject matter jurisdiction over a crime if any element of the offense, under the laws of this state, takes place in Ohio. R.C. 2901.11(A)(1). The Ohio Constitution establishes the right of the accused to have a "trial by an impartial jury of the county in which the offense is alleged to have been committed." Ohio Constitution, Article I, Section 10. R.C. 2901.12 further guarantees that right by requiring that a criminal trial shall be held in a court with subject matter jurisdiction "in the territory of which the offense or any element of the offense was committed."

**{¶14}** As for venue, it has been held that the prosecution must prove beyond a reasonable doubt that the crimes alleged were committed in the county where the trial was held, if the defendant did not waive this right. *State v. Gonzales*, 188 Ohio App.3d 121, 2010-Ohio-982, 934 N.E.2d 948, ¶ 4 (3rd Dist.), quoting *Toledo v. Taberner*, 61 Ohio App.3d 791, 793, 573 N.E.2d 1173 (6th Dist.1989), citing *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716, (1983); *State v. Draggo*, 65 Ohio St.2d 88, 90, 418 N.E.2d 1343 (1981); and *State v. Nevius*, 147 Ohio St. 263, 71 N.E.2d 258 (1947), paragraph three of the syllabus. Accordingly, we have explained that, "Venue is not a material element of any crime but, unless waived, is a fact that must be proven at trial beyond a reasonable doubt." *State v. Barr,* 158 Ohio App.3d 86, 2004-Ohio-3900, 814 N.E.2d 79, ¶ 14 (7th Dist.). Typically the prosecutor will directly establish venue; however, it does not need to be proven in express terms, but rather can be established by the totality of facts and circumstances of the case. *Gonzales* at ¶ 4, quoting *Taberner* at 793.

**{¶15}** At the outset, we note that Higgins may have waived the venue argument because he failed to raise a Crim.R. 29 motion for acquittal or any other motion that argued that the state failed to prove that the crimes occurred in Jefferson

County. See *Gonzales* at ¶ 5. That said, in the interest of justice we will still address the merits of the argument.

**{¶16}** At trial, Sheriff Abdalla stated that the site of the rape was at the victim's home located at 1309 County Road 3, Rayland, Ohio. Trial Tr. 171, 217. He further provided that this address is in Jefferson County. Trial Tr. 171, 217. The victim's mother testified that at the time of the offense she was living at 1309 County Road 3, Rayland, Ohio in Jefferson County. Trial Tr. 304. She indicated that the sexual assault occurred at that address. Trial Tr. 306-307. The victim's father further testified that the victim lives with the mother at the 1309 County Road 3, Rayland, Ohio residence. Trial Tr. 317, 318. The victim's sister, who witnessed the sexual conduct, also testified that the victim lives with the mom and that she was also staying with her mom on April 25, 2001, when the rape occurred. Trial Tr. 334-335. While the victim did not testify to the address of the house she was living at, she did testify that the rape occurred at that residence. Trial Tr. 329.

**{¶17}** Higgins claims that only the victim and her sister, the witness to the alleged sexual conduct, can establish where the sexual conduct occurred. He offers no citations to support this position. As explained above, where the crime occurred can be proven by a totality of the facts and circumstances of the case. *Gonzales* at ¶ 4, quoting *Taberner* at 793. Thus, it can be proven through a collection of every person's testimony and the evidence admitted at trial. See *Taberner* at 793.

**{¶18}** The above testimony was undisputed. Therefore, the state proved beyond a reasonable doubt that the rape occurred at 1309 County Road 3, Rayland, Jefferson County, Ohio. Thus, the state proved both subject matter jurisdiction and venue.

**{¶19}** In the text of the assignment, Higgins also contends that the state failed to prove when the rapes occurred. This argument also fails. Higgins own statement to Sheriff Abdalla indicates that sexual conduct occurred on April 25, 2011 and the preceding week. Thus, that statement alone, which was not disputed, provides evidence of when the rapes occurred.

**{¶20}** Accordingly, for the above stated reasons, we find that there is no merit with this assignment of error.

<u>Second Assignment of Error</u>

**{¶21}** "The State of Ohio failed to establish an essential element of the crime, namely that penetration had occurred through direct examination of the child/victim."

**{¶22}** The argument presented in this assignment of error is a sufficiency of the evidence argument. A challenge to the sufficiency of the evidence supporting a conviction requires the court to determine whether the state has met its burden of production at trial. *State v. Thompkins,* 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *Id.* An inquiry into sufficiency focuses on whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶23}** Higgins was convicted of two counts of rape in violation of R.C. 2907.02(A)(1)(b), which states:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

\* \* \*

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

R.C. 2907.02(A)(1)(b).

**{¶24}** By statutory definition "sexual conduct" means vaginal intercourse, anal intercourse, and oral sex, i.e. fellatio and/or cunnilingus. R.C. 2907.01(A). It also includes insertion of any body part into the vaginal or anal opening of another. R.C.

2907.01(A). "Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

**{¶25}** The indictment also alleged that the victim was under the age of 10, which pursuant to division (B) of R.C. 2907.02, could subject Higgins to life in prison without the possibility of parole.

**{¶26}** The element Higgins focuses on in this assignment of error is sexual conduct and whether the state provided evidence of penetration.

**{¶27}** The victim testified at trial that Higgins touched her "private area" with his hand and with his "private area". Trial Tr. 331. Her testimony does not indicate whether there was actual digital or penal penetration. Trial Tr. 331. She denies that he put his penis in her mouth. Trial Tr. 331. Thus, her testimony does not establish sexual conduct to constitute rape; it does not establish digital or penile penetration or oral sex.

**{¶28}** That said, other evidence of sexual conduct was presented at trial. This occurred through Higgins' April 26, 2011 confession, the victim's statement to the emergency room nurse on April 25, 2011, and the victim's sister who witnessed one alleged incident of sexual conduct.

**{¶29}** State's exhibit 2 and 3, which were both admitted into evidence, are the written confession from Higgins and the recorded video confession. Both establish penile penetration into the victim's vagina. Higgins specifically stated that part of the head of his penis was in the victim's vagina. Exhibit 3 Video Confession. As stated above, even slight penetration is sufficient for vaginal intercourse. R.C. 2907.01(A). Furthermore, in his confession, he also admitted that on April 25, 2011 and the previous week, he had the victim perform oral sex on him. This is also sufficient to constitute sexual conduct.

**{¶30}** Likewise, the nurse who examined the victim also offered evidence of penetration and sexual conduct. During her testimony, Exhibit 11 was introduced and was later admitted into evidence. Exhibit 11 is a document that is filled out in connection with the rape kit. Trial Tr. 236. That document indicates that there was penile and oral penetration. Furthermore, on the second page of this document is

the Narrative History in the victim's own words. This section indicates that Higgins made the victim perform oral sex on him on April 25, 2011 and that this was not the first time this occurred. The victim also told the nurse that Higgins had put his penis in her vagina on that date and that he had also done that to her on previous occasions. The victim also relayed that prior to that date Higgins had had anal intercourse with her.

{¶31} Lastly, the victim's sister also testified that on April 25, 2011 she witnessed Higgins with his finger in the victim's vagina. Trial Tr. 337. By definition, if believed, this also constituted sexual conduct by means of digital penetration.

{¶32} Thus, there was evidence of at least five incidents of sexual conduct. Considering all of the testimony and evidence admitted at trial, there was sufficient evidence of sexual conduct and penetration. This assignment of error lacks merit.

<u>Third Assignment of Error</u>

{¶33} "The Defendant/Appellant was unable to make an intelligent waiver of his *Miranda* rights: therefore, his confession should not have been admitted. It was reversible error to permit the taped statement of the interrogation into evidence."

{¶34} This assignment of error addresses the trial court's denial of Higgins' motion to suppress. He contends the confession should have been suppressed and thus, it was reversible error for the court to admit the confession into evidence.

{¶35} Appellate review of a suppression decision presents a mixed question of law and fact. *State v. Roberts,* 110 Ohio St .3d 71, 2006–Ohio–3665, 850 N.E.2d 1168, ¶ 100. On factual matters, the trial court occupies the best position to evaluate the credibility of witnesses and weigh the evidence. *Id.,* citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). Thus, factual findings are accorded great deference. *Roberts,* citing *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). The trial court's legal conclusions, on the other hand, are reviewed *de novo*. *Roberts*, citing *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, ¶ 8.

{¶36} Higgins' motion to suppress was based on Dr. Haskins' conclusion that he could not intelligently waive his *Miranda* rights. For a waiver of the *Miranda* rights

to be effective, it must be knowing, intelligent and voluntary. *Colorado v. Connelly*, 497 U.S. 157, 107 S.Ct. 515 (1986). Thus, her conclusion, if believed, would render the confession inadmissible.

**{¶37}** It is the government's burden to prove that the statements made were not obtained in violation of the offender's *Miranda* rights. *United States v. Reese* (N.D.Ohio 2010), 1:09 CR 00145, 2010 WL 3730148, citing *Miranda v. Arizona* (1966), 384 U.S. 436, 475 and *Connelly,* 479 U.S. at 168. The United States Supreme Court has stated that the totality-of-the-circumstances approach is adequate to determine whether there has been a valid waiver of *Miranda* rights. *Fare v. Michael C.,* 442 U.S. 707, 725 (1979). The totality approach requires inquiry into all the circumstances surrounding the interrogation. *Id.* This includes evaluation of the offender's age, experience, education, background, intelligence, and whether the offender has the capacity to understand the warnings given to him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights. *Id.*

**{¶38}** Previously, we have addressed whether the trial court's conclusion that a criminal defendant did not intelligently waive his *Miranda* rights was correct. *State v. Lynn*, 7th Dist. No. 11BE18, 2011-Ohio-6404. In that case, Dr. Haskins evaluated the defendant and found that he had an IQ of 73, which is in the borderline range. She also administered Thomas Grisso's Instruments for Assessing Understanding & Appreciation of *Miranda* rights, which is commonly referred to as the Grisso test and as the name suggests it is only used to determine whether a defendant understands the *Miranda* rights. Following the administration of this test, she concluded that Lynn did not fully understand the irrevocable nature of the right to remain silent. She noted that he only scored 4 out of 10 in the section that relates to the significance of the right to remain silent. He thought the right to remain silent meant he did not have to talk unless the police told him to. *Id.* at ¶ 40.

**{¶39}** In making our determination on the correctness of the trial court's ruling, in addition to Dr. Haskins' observation and opinion, we also referenced the fact that some of the cases that concluded that there was an understanding of *Miranda* found as such because of conduct that occurred prior to and during the interrogation.

However, in *Lynn,* there was no conduct that could have led the court to believe that there was an understanding of the *Miranda* rights. For example, prior to the interrogation, there was no evidence that Lynn made any statement to anyone trying to explain away the allegation that he engaged in sexual conduct with the victim. *Id.* at ¶ 42. Thus, in that case, there was evidence that there was not an understanding of the *Miranda* rights.

**{¶40}** That said, we also acknowledged that there was evidence that the waiver was intelligently made. Lynn was twenty-five years old at the time of the interrogation, he had completed high school and he had two other experiences with the judicial system. *Id.* at ¶ 43. Furthermore, the waiver he was given was within his reading level. *Id.*

**{¶41}** Regardless of those admitted facts, we affirmed the trial court's conclusion that the waiver was not intelligently made. Ultimately we concluded that the trial court found Dr. Haskins to be credible and when there is evidence to support suppression and evidence to deny suppression, an appellate court will overwhelmingly affirm a trial court's decision due to the great deference that it must be given in matters of credibility. *Id.* at ¶ 44.

**{¶42}** In the instant case, Dr. Haskins interviewed Higgins for six hours. During that time, she administered the Neurobehavioral Cognitive Status Examination (COGNISTAT), Wechsler Adult Intelligence Scale (I.Q. test), the Wide Range Achievement Test, Validity Indicator Profile, and the Grisso test. The result of the COGNISTAT and the I.Q. tests were that Higgins was borderline to low average range of intellectual functioning with an I.Q. of 72. The Wide Range Achievement Test indicated in Word Reading he read at a 6th grade, 9th month level. On Sentence Comprehension his grade equivalent was at an 8th grade, 2nd month level. The Validity Indicator test indicated that the results of the tests were a valid representation of Higgins' ability.

**{¶43}** As mentioned above, the Grisso test specifically tests for understanding of *Miranda* rights. The Grisso test consists of four parts: Comprehension of *Miranda* Rights, Comprehension of *Miranda* Rights – Recognition, Comprehension of *Miranda*

Vocabulary, and Function of Rights in Interrogation. In the Comprehension of *Miranda* Rights, Higgins scored 8 out of 8; his score was better than the mere score of 7 found for individuals aged 23 to 26 with an IQ of 71 to 80. In the Comprehension of *Miranda* Rights – Recognition section, he scored 9 out of a possible 12 points. This section concluded that he demonstrated a weakness in his comprehension of his right to remain silent and of when it is he is entitled to see an attorney. In the Comprehension of *Miranda* Vocabulary, he scored 10 out of 12 points. Lastly, in the Function of Rights in Interrogation, he scored 10 out of 10 points.

**{¶44}** In completing her report, Dr. Haskins also stated that the "Your Rights" form that is used by the Jefferson County Sheriff's Office for waiver of *Miranda* rights has a Flesch-Kincaid Readability Test of a 4.1 grade level. Thus, she concluded that given Mr. Higgins sentence comprehension score on the WRAT4, he was able to read and paraphrase the form. However, she added:

[E]ven though the waiver and warning were read to Mr. Higgins, he still did not have adequate intellect or academic achievement to comprehend and appreciate the implications of the statement read to him. Additionally, there is no portion or place on the rights form that is designated as the waiver or rights waiver. There is simply a question: "Having these rights in mind, do you wish to talk to us now?" Mr. Higgins' "yes" followed by his initials on each of these statements on the form he signed was in all probability a simple matter of complying in a situation where he was confronted with an authority figure.

02/24/12 Report from Dr. Haskins.

**{¶45}** In all she concluded that Higgins did not intelligently waive his *Miranda* rights:

"Current assessment of Mr. Higgins capacity to knowingly, intelligently and voluntarily waive his Miranda rights revealed he evidenced some understanding of his rights to silence and an attorney. However, he did not understand or appreciate the meaning and function of those rights. He did not comprehend or understand he had a right to

not self-incriminate or not tell on himself or confess. While he acknowledged he had a right to an attorney, he poorly understood why it was that an attorney would be a good idea or why an attorney would be particularly useful in helping him with his legal situation. That is he did not adequately understand or appreciate the special training and skills an attorney has that could be brought to bear on his legal situation.

Overall, it is my opinion with reasonable psychological certainty that while Mark Higgins has demonstrated a limited knowledge of his Miranda rights, he did not intelligently waive those rights because he did not appreciate the nature and extent of those rights and the meaning of those rights related to his particular situation. Interfering with his intelligent waiver of his rights were his limited intellect, his depression, his withdrawal from alcohol, opiates and marijuana and his fear of Sheriff Abdalla. Mr. Higgins was not physically mistreated or disrespected during interrogation. However, there was a speed read of his rights, he was interrogated as a jail inmate by the local sheriff around whom there has over the years developed considerable purported "urban legend" related to treatment of inmates and suspects, and no effort was made to ascertain whether or not the defendant understood his rights beyond "you understand?" Thus, given the circumstances it is difficult to imagine Mr. Higgins voluntarily waived his rights.

02/24/12 Dr. Haskins' Report.

**{¶46}** The trial court disagreed with her conclusion:

The defendant's witness testified that she did not dispute that defendant <u>knowingly</u> and <u>voluntarily</u> waived his Miranda rights, but that the defendant did not <u>intelligently</u> waive his Miranda rights. Defendant's witness based this opinion upon her examination and interview of defendant, various tests which she administered to the defendant,

historical information supplied or obtained regarding the defendant, conversations with the defendant's attorney and a view of the audio/visual recording of defendant's interview/questioning by the Sheriff.

Dr. Haskins opined that the defendant has a low I.Q. of 72 (plus or minus 5 points) and is not mentally retarded but is on the borderline and near to mild mental retardation. The defendant reported depression, grieving of recent deaths and withdrawing from drugs and alcohol at the time of giving of the statement.

The evidence presented does not establish that the defendant was withdrawing from any drugs or alcohol at the time of the statement. The evidence does not establish that the defendant was suffering from grief or depression that would affect his ability to waive his Miranda rights. The evidence does establish by a preponderance that the defendant was of sufficient intelligence to comprehend and waive his Miranda rights; that he understood those rights and that he knowingly, intelligently and voluntarily waived his Miranda rights.

The Court has considered the defendant's age (26 years), the defendant's mental capacity (I.Q. of 72 and high school/vocation school completion). That the defendant had prior criminal involvement and was on probation at the time of the statement, that the length and intensity of the interrogation was certainly reasonable and appropriate, that there was no physical deprivation or mistreatment, that there was no existence of a threat or inducement, and that the defendant was aware that his statement would be used against him.

Underline in Original. 03/19/12 J.E.

{¶47} Thus, the trial court did not find Dr. Haskins' conclusion to be credible. Although Higgins' rights were read to him in less than 30 seconds, we uphold that finding. The trial court's statements regarding Higgins prior involvement in criminal activity and his mental capacity are accurate. At the suppression hearing Sheriff

Abdalla stated that Higgins informed him that Higgins has had *Miranda* rights read to him at least on one other occasion. Suppression Tr. 10. Furthermore, as the trial court states there is no evidence, besides Higgins' own statement, that at the time of the interrogation he was withdrawing from drug and/or alcohol use. Sheriff Abdalla testified that during the interrogation, Higgins did not ask for medical treatment for withdrawal and did not appear to be under influence. Suppression Tr. 9-10. Even Dr. Haskins admitted on the stand that when watching the video confession she did not see any outward signs of intoxication or withdrawal. Suppression Tr. 116. Likewise, the recording of the confession indicates that Higgins was not threatened or mistreated during the interrogation. Moreover, the Grisso test results and the fact that the "Your Rights" form was easily within his reading level indicates that he did have a basic understanding of the rights he was waiving.

**{¶48}** In *Lynn* we favorably cited an Illinois Appellate Court decision which states:

> If intelligent knowledge in the *Miranda* context means anything, it means the ability to understand the very words used in the warnings. It need not mean the ability to understand far-reaching legal and strategic effects of waiving one's rights, or to appreciate how widely or deeply an interrogation may probe, or to withstand the influence of stress or fancy; but to waive rights intelligently and knowingly, one must at least understand basically what those rights encompass and minimally what their waiver will entail.

*Lynn*, 2011-Ohio-6404, at ¶ 21-22, quoting *People v. Bernasco*, 138 Ill.2d 349, 363–64 (1990).

**{¶49}** Higgins met this test. That said, we take this opportunity to note that while the written *Miranda* warning in Jefferson County is adequate, the questionnaire in addition to asking if the offender understands the rights, should probably also include a question to the offender asking him if he wishes to waive those rights.

**{¶50}** In conclusion, given our standard of review and the information provided at the suppression hearing, we uphold the trial court's suppression ruling;

the trial court did not abuse its discretion in disagreeing with Dr. Haskins' conclusion. This assignment of error lacks merit.

<u>Conclusion</u>

**{¶51}** For the foregoing reasons, all three assignments of error lack merit. The judgment of the trial court is hereby affirmed.

Waite, J., concurs.
DeGenaro, P.J., concurs.