[Cite as *State v. Myers*, 2021-Ohio-631.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2019-07-074 |
| Appellee, | : | O P I N I O N<br>3/8/2021 |
| | : | |
| - vs - | : | |
| | : | |
| AUSTIN GREGORY MYERS, | : | |
| Appellant. | : | |

CRIMINAL DEATH APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 14CR29826

David P. Fornshell, Warren County Prosecutor, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Law Office of Timothy Farrell Sweeney, Timothy F. Sweeney, The 820 Building, 820 West Superior Avenue, Suite 430, Cleveland, Ohio 44113-1800, for appellant

John P. Parker, 988 East 185th Street, Cleveland, Ohio 44119, for appellant


**M. POWELL, J.**

{¶ 1} Appellant, Austin Gregory Myers, appeals a decision of the Warren County Court of Common Pleas denying his motion for leave to conduct discovery and petition for postconviction relief.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On January 27, 2014, Myers and codefendant, Timothy Mosley, began to plot burglarizing the home of a known drug dealer or the home of Justin Back, Myers' childhood friend. Mark Cates, Back's stepfather, purportedly had a safe containing a firearm and money. Ultimately, Myers and Mosley chose to burglarize the Cates' home. The two men drove to the Cates' home. Upon knocking, they were surprised when Back answered the door. The two men briefly visited with Back and then left. Upon leaving the Cates' home, Myers suggested they return to the home, kill Back, and steal the contents of the safe. Myers and Mosley began to plan Back's murder.

{¶ 3} They initially planned to kill Back by injecting him with cold medicine. In furtherance of their plan, they attempted to purchase cold medicine and a bottle of poisonous "bug wash"; however, Myers' credit card was declined. Later that day, Myers and Mosley returned to the Cates' home and watched a movie with Back. When Cates came home from work, he joined them in watching the movie for a short time until he and Back had to leave for an appointment with a Navy recruiter. Myers and Mosley then left the house.

{¶ 4} Myers and Mosley continued to discuss how to murder Back and burglarize the Cates' home. As they discussed their plans, Mosley wrote down their ideas in a small notebook. The two men hatched a scheme to strangle Back with a wire, take the safe, and make it look as though Back had stolen the safe and run away from home. The two men further planned to dump Back's body in a remote wooded area. Myers and Mosley purchased galvanized steel cable and two metal rope cleats to fashion a garrote. The garrote was put together by their friend Logan Zennie.

{¶ 5} The next morning, January 28, 2014, Myers and Mosley bought ammonia, septic-tank cleaner, and rubber gloves. They believed the septic enzymes would help to

decompose the body in cold weather. Around 1:00 p.m., the two men went to the Cates' home. Mosley was carrying the garrote as well as a five- or six-inch pocketknife. The plan was for Myers to distract Back while Mosley came up behind him. Myers would hold Back down while Mosley would choke him to death with the garrote. After the two men arrived at the Cates' home, Back offered them a drink which Myers accepted. As Back was reaching into the refrigerator, Mosley came up behind him and tried to pull the garrote around his throat. However, the garrote only looped around Back's chin. Mosley panicked and as Myers restrained Back, Mosley repeatedly stabbed him with his knife. As Back begged for his life, Myers simply told him it would be over soon.

{¶ 6} After the murder, Myers and Mosley wrapped Back's body in a blanket, cleaned up the crime scene, and found the safe. Myers also found a handgun belonging to Cates, which he loaded. The two men shoved Back's body into the trunk of Mosley's car and left the house with the safe and various other stolen items. They stopped at Mosley's home where they cleaned up and changed clothes. They eventually dumped Back's body behind a log in a field in Preble County. Myers poured ammonia and septic enzymes onto Back's body. Myers then shot the body twice with the stolen handgun before it jammed. Myers and Mosley were later apprehended; Back's body was discovered on January 29, 2014. An autopsy determined that Back had died of multiple stab wounds. At the time of the murder, Myers and Mosley were both 19 years old.

{¶ 7} Myers was indicted in February 2014 on one count of aggravated murder with prior calculation and design and one count of aggravated murder in violation of R.C. 2903.01(B). Both counts were accompanied by three death-penalty specifications. Myers was further indicted for aggravated robbery, aggravated burglary, grand theft of a firearm, and abuse of a corpse, all with an accompanying firearm specification, and kidnapping, tampering with evidence, and safecracking. Mosley was indicted on similar charges.

However, a week before Myers' jury trial, Mosley reached a plea agreement in which he agreed to testify against Myers. Mosley pled guilty to all charges in exchange for the dismissal of the death-penalty specifications; he was sentenced to life in prison without the possibility of parole.

{¶ 8} The guilt phase of Myers' jury trial commenced on September 22, 2014. On October 2, 2014, the jury found Myers guilty on all counts and specifications. The two aggravated-murder counts were merged for purposes of sentencing; the state elected to proceed on the prior-calculation-and-design aggravated murder count with the aggravated-robbery specification.

{¶ 9} The penalty phase of the jury trial was held on October 6, 2014. Myers presented the testimony of his parents and a sibling and made an unsworn statement by way of mitigation. Myers had no prior criminal history or delinquency adjudications. The jury recommended a death sentence. On October 16, 2014, the trial court sentenced Myers to death and imposed prison sentences on the noncapital counts. Myers' conviction and death sentence were subsequently upheld by the Ohio Supreme Court. *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903.

{¶ 10} On November 10, 2016, while his appeal was pending before the supreme court, Myers filed a petition for postconviction relief ("PCR petition"), raising 60 grounds for relief. The PCR petition challenged the constitutionality of the death penalty and the Ohio statutes governing its imposition, argued that Myers was denied the effective assistance of counsel during both the guilt and penalty phases of the trial, and alleged violation of Myers' due process rights. On November 18, 2016, Myers moved for leave to conduct discovery in support of his PCR petition. In 2017, the state filed an answer to the PCR petition, then moved for summary judgment. In January 2018, the trial court issued a scheduling order which provided that Myers could file a supplemental motion for discovery by March 1, 2018,

- 4 -

and that the state's summary judgment motion would be held in abeyance pending resolution of Myers' discovery motion.

{¶ 11} On March 1, 2018, Myers filed a supplemental motion for discovery, arguing he was entitled to conduct discovery in support of his PCR petition pursuant to newly-amended R.C. 2953.21, which became effective on April 6, 2017. The amended statute makes substantial changes regarding PCR petitions in death-penalty cases, and in particular, allows capital petitioners to obtain discovery in aid of their PCR petition if good cause is shown. *State v. Ketterer*, 12th Dist. Butler No. CA2016-08-166, 2017-Ohio-4117, ¶ 46.

{¶ 12} On July 3, 2018, the trial court denied Myers' discovery motions. The trial court found that amended R.C. 2953.21 was not applicable in the case at bar because the statute did not explicitly state it was retroactive. Alternatively, the trial court found that even if the statutory amendment was applied retroactively, Myers was not entitled to discovery as he had not demonstrated "good cause."

{¶ 13} On November 26, 2018, Myers filed a memorandum opposing the state's motion for summary judgment; the memorandum included 12 additional documents consisting of affidavits, transcripts, and documentary evidence. Myers' memorandum and supplemental appendix triggered additional pleadings from the parties. Ultimately, the trial court never ruled upon the state's summary judgment motion. Instead, on June 27, 2019, the trial court denied Myers' PCR petition without a hearing. The trial court found that Myers' claims were either barred by res judicata or failed to set forth sufficient operative facts to establish substantive grounds for relief, and therefore, "no evidentiary hearing [was] required."

{¶ 14} Myers now appeals the trial court's denial of his PCR petition and discovery motions, raising 11 assignments of error.

## II.  ANALYSIS

### A.  Standards of Review for Postconviction Relief Petitions

{¶ 15} A postconviction proceeding is a collateral civil attack on a criminal judgment, not an appeal of a criminal conviction.  *State v. Dillingham*, 12th Dist. Butler Nos. CA2012-02-037 and CA2012-02-042, 2012-Ohio-5841, ¶ 8.  To prevail on a PCR petition, the petitioner must establish a violation of his constitutional rights that renders the judgment of conviction void or voidable.  R.C. 2953.21.  A PCR petition does not provide a petitioner a second opportunity to litigate his or her conviction, nor is the petitioner automatically entitled to an evidentiary hearing.  *State v. Rose*, 12th Dist. Butler No. CA2012-03-050, 2012-Ohio-5957, ¶ 16.  A trial court properly denies a PCR petition without an evidentiary hearing if the supporting affidavits, the documentary evidence, the files, and the records of the case do not demonstrate that the petitioner set forth sufficient operative facts to establish substantive grounds for relief.  *State v. Blankenburg*, 12th Dist. Butler No. CA2012-04-088, 2012-Ohio-6175, ¶ 9; R.C. 2953.21.

{¶ 16} "It is well established that a trial court may dismiss a postconviction relief petition on the basis of the doctrine of res judicata."  *State v. Davis*, 12th Dist. Butler No. CA2012-12-258, 2013-Ohio-3878, ¶ 30.  Under res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment or conviction, or on an appeal from that judgment.  *State v. Wagers*, 12th Dist. Preble No. CA2011-08-007, 2012-Ohio-2258, ¶ 10, citing *State v. Szefcyk*, 77 Ohio St.3d 93, 1996-Ohio-337, syllabus.

{¶ 17} The presentation of competent, relevant, and material evidence outside the record may defeat the application of res judicata.  *State v. Lawson*, 103 Ohio App.3d 307,

315 (12th Dist.1995). The evidence submitted with the petition cannot be merely cumulative of or alternative to evidence presented at trial. *State v. Jackson*, 8th Dist. Cuyahoga No. 104132, 2017-Ohio-2651, ¶ 16. To overcome the res judicata bar, evidence outside the record must demonstrate that the petitioner could not have appealed the constitutional claim based upon information in the original record. *State v. Piesciuk*, 12th Dist. Butler No. CA2013-01-011, 2013-Ohio-3879, ¶ 18. If evidence outside the record is "'marginally significant and does not advance the petitioner's claim beyond a mere hypothesis and a desire for further discovery,' *res judicata* still applies to the claim." *State v. Cowans*, 12th Dist. Clermont No. CA98-10-090, 1999 Ohio App. LEXIS 4157, *8-9 (Sept. 7, 1999).

{¶ 18} "In reviewing an appeal of postconviction relief proceedings, this court applies an abuse of discretion standard." *State v. Snead*, 12th Dist. Clermont No. CA2014-01-014, 2014-Ohio-2895, ¶ 16. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Thornton*, 12th Dist. Clermont No. CA2012-09-063, 2013-Ohio-2394, ¶ 34; *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130. The trial court does not abuse its discretion in dismissing a PCR petition without an evidentiary hearing if (1) the petitioner fails to set forth sufficient operative facts to establish substantive grounds for relief, or (2) the operation of res judicata prohibits the claims made in the petition. *State v. Maxwell*, 8th Dist. Cuyahoga No. 107758, 2020-Ohio-3027, ¶ 25.

{¶ 19} With these principles and standards in mind, we now address Myers' assignments of error together and out of order where appropriate.

**B. Summary Dismissal of Myers' PCR Petition**

{¶ 20} Assignment of Error No. 1:

{¶ 21} THE TRIAL COURT DENIED MYERS' RIGHTS TO DUE PROCESS, ACCESS TO THE OHIO COURTS, AND AN ADEQUATE CORRECTIVE PROCESS, AND

- 7 -

VIOLATED R.C. § 2953.21, WHEN IT TREATED THE STATE'S POST-ANSWER "MOTION FOR SUMMARY JUDGMENT" AS A MOTION SEEKING SUMMARILY DISMISSAL (sic) UNDER R.C. § 2953.21(C) [NOW (D)], AND FAILED TO APPLY THE REQUISITE SUMMARY JUDGMENT STANDARDS IN SUMMARILY DISMISSING EVERY CLAIM SET FORTH IN MYERS' PCR PETITION.

{¶ 22} This assignment of error challenges the trial court's failure to rule upon the state's summary judgment motion and the court's election instead to grant a summary dismissal of Myers' PCR petition. Specifically, Myers argues that the trial court erred in granting a summary dismissal of his PCR petition where there was a pending, fully briefed motion for summary judgment. Myers asserts that because the state filed an answer to the PCR petition and a motion for summary judgment and failed to move for dismissal of the petition under R.C. 2953.21(D), the trial court was required to apply the standard set forth in R.C. 2953.21(E) and was precluded from summarily dismissing the PCR petition under R.C. 2953.21(D).[1]

{¶ 23} R.C. 2953.21 provides three methods for adjudicating a PCR petition: (1) "summary dismissal" under R.C. 2953.21(D) and *State v. Calhoun,* 86 Ohio St.3d 279, 1999-Ohio-102, paragraph two of the syllabus; (2) "summary judgment" under R.C. 2953.21(E); and (3) an "evidentiary hearing" under R.C. 2953.21(F). *State v. Blankenburg,* 12th Dist. Butler No. CA2013-11-197, 2014-Ohio-4621, ¶ 23.

{¶ 24} Under R.C. 2953.21(E), either party may move for summary judgment on the issues raised. In ruling on a summary judgment motion in proceedings involving a PCR petition, the trial court must use the same standards set forth in Civ.R. 56(C), i.e., a party is

---

1. As stated earlier, R.C. 2953.21 was amended, effective April 6, 2017, and some of its provisions were renumbered. As pertinent here, former R.C. 2953.21(C), (D), and (E) were renumbered 2953.21(D), (E), and (F). We note that for purposes of this assignment of error, the language of the applicable renumbered statutory provisions is identical to the language of their pre-amendment counterparts. We therefore elect to apply the current version of R.C. 2953.21.

entitled to summary judgment only if there is no genuine issue of material fact and reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *State v. Francis*, 12th Dist. Butler No. CA2013-05-078, 2014-Ohio-443, ¶ 11. Summary judgment in postconviction proceedings is appropriate only if the right to summary judgment appears on the face of the record. R.C. 2953.21(E); *Id.*

{¶ 25} Under R.C. 2953.21(D), "a trial court properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *Calhoun*, 86 Ohio St.3d 279 at paragraph two of the syllabus; *Francis* at ¶ 12.

{¶ 26} We find that the trial court did not err in granting a summary dismissal of Myers' PCR petition under R.C. 2953.21(D) notwithstanding the state's motion for summary judgment and its failure to move for dismissal of the PCR petition under R.C. 2953.21(D). We have held that R.C. 2953.21(D) "explicitly requires the trial court to look beyond the petition and examine the record in order to determine whether there are substantive grounds for relief. The trial court must independently review the record and address the substance of a petitioner's claims regardless of whether the state responds to his petition for postconviction relief." *State v. Wallen*, 12th Dist. Clermont No. CA97-02-017, 1997 Ohio App. LEXIS 3647, *4 (Aug. 11, 1997). *See also State v. Hartman*, 2d Dist. Montgomery No. 27162, 2017-Ohio-7933 (a trial court has an independent duty to analyze a PCR petition under R.C. 2953.21[D]); *State v. McCabe*, 4th Dist. Washington No. 97CA32, 1998 Ohio App. LEXIS 4487 (Sept. 14, 1998) (it is well settled that, regardless of whether or not the state responds to a petition for postconviction relief, R.C. 2953.21[D] requires the trial court

- 9 -

to sua sponte analyze the petition). Thus, the trial court was required to independently determine whether there were substantive grounds for relief and the pendency of the state's motion for summary judgment did not preclude the trial court from summarily dismissing the PCR petition under R.C. 2953.21(D). *See State v. McKelton*, 12th Dist. Butler No. CA2015-02-028, 2015-Ohio-4228; *State v. Noling*, 11th Dist. Portage No. 98-P-0049, 2003-Ohio-5008.

{¶ 27} In his reply brief Myers argues for the first time that the trial court's summary dismissal of the PCR petition without prior notice to the parties violated the notice requirement of procedural due process. However, it is well established that an appellant may not raise new issues or assignments of error in a reply brief. *State v. Renfro*, 12th Dist. Butler No. CA2011-07-142, 2012-Ohio-2848, ¶ 28, citing App.R. 16; *State ex rel. Colvin v. Brunner*, 120 Ohio St.3d 110, 2008-Ohio-5041. A reply brief simply provides the appellant with an opportunity to respond to the arguments raised in the appellee's brief. *State v. Quaterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 18. Myers' argument is not appropriately before the court and will not be considered. Furthermore, as the discussion above makes clear, parties in postconviction proceedings are on notice of a trial court's sua sponte authority to grant a summary dismissal of a PCR petition. R.C. 2953.21; *Hartman*, 2017-Ohio-7933; *McKelton*, 2015-Ohio-4228; *McCabe*, 1998 Ohio App. LEXIS 4487.

{¶ 28} Myers' first assignment of error is overruled.

**C. Discovery Motions**

{¶ 29} Assignment of Error No. 2:

{¶ 30} THE TRIAL COURT DENIED MYERS' RIGHTS TO DUE PROCESS, ACCESS TO THE OHIO COURTS, AND AN ADEQUATE CORRECTIVE PROCESS, AND VIOLATED R.C. § 2953.21(A)(1) AND ITS DISCOVERY AMENDMENTS, WHEN THE COURT HELD THAT THE DISCOVERY AMENDMENTS WERE NON-RETROACTIVE

AND THUS INAPPLICABLE TO MYERS' CASE, AND THEN ENFORCED AN UNREASONABLE AND IMPROPERLY-RESTRICTIVE DEFINITION OF "GOOD CAUSE" TO DENY DISCOVERY TO MYERS ON EVERY ONE OF HIS CLAIMS.

{¶ 31} Assignment of Error No. 3:

{¶ 32} EVEN UNDER THE PRIOR VERSION OF THE PCR STATUTE, THE TRIAL COURT ERRED WHEN IT DENIED MYERS' PCR PETITION WITHOUT AFFORDING HIM ANY OPPORTUNITY TO CONDUCT DISCOVERY.

{¶ 33} These assignments of error challenge the trial court's denial of Myers' discovery motions. As stated above, the trial court found that amended R.C. 2953.21 was not applicable in the case at bar because the statute did not explicitly state it was retroactive. Alternatively, the trial court found that even if the statutory amendment was applied retroactively, Myers was not entitled to discovery as he had not demonstrated "good cause." The statute was amended after Myers filed his PCR petition and first motion for discovery but before he filed his supplemental motion for discovery.

{¶ 34} Before R.C. 2953.21 was amended on April 6, 2017, it was well established that the statutory scheme governing postconviction relief did not entitle a petitioner to conduct discovery. *State ex rel. Love v. Cuyahoga Cty. Prosecutor's Office*, 87 Ohio St.3d 158, 159, 1999-Ohio-314; *Ketterer*, 2017-Ohio-4117 at ¶ 45. Nevertheless, discovery could be proper where a petitioner set forth operative facts outside the record that revealed a constitutional error in his or her case. *Id.* The granting or overruling of discovery motions rested within the sound discretion of the trial court. *State v. Lawson*, 12th Dist. Clermont No. CA2011-07-056, 2012-Ohio-548, ¶ 17.

{¶ 35} Amended R.C. 2953.21 makes substantial changes regarding PCR petitions in death-penalty cases, and in particular, allows capital petitioners to obtain discovery in aid of their PCR petition if good cause is shown. Specifically, R.C. 2953.21(A)(1)(d) now

provides that

> At any time in conjunction with the filing of a petition for postconviction relief under division (A) of this section by a person who has been sentenced to death, or with the litigation of a petition so filed, the court, for good cause shown, may authorize the petitioner in seeking the postconviction relief and the prosecuting attorney of the county served by the court in defending the proceeding, to take depositions and to issue subpoenas and subpoenas duces tecum in accordance with divisions (A)(1)(d), (A)(1)(e), and (C) of this section, and to any other form of discovery as in a civil action that the court in its discretion permits. The court may limit the extent of discovery under this division. In addition to discovery that is relevant to the claim and was available under Criminal Rule 16 through conclusion of the original criminal trial, the court, for good cause shown, may authorize the petitioner or prosecuting attorney to take depositions and issue subpoenas and subpoenas duces tecum in either of the following circumstances:
>
> (i) For any witness who testified at trial or who was disclosed by the state prior to trial, except as otherwise provided in this division, the petitioner or prosecuting attorney shows clear and convincing evidence that the witness is material and that a deposition of the witness or the issuing of a subpoena or subpoena duces tecum is of assistance in order to substantiate or refute the petitioner's claim that there is a reasonable probability of an altered verdict. This division does not apply if the witness was unavailable for trial or would not voluntarily be interviewed by the defendant or prosecuting attorney.
>
> (ii) For any witness with respect to whom division (A)(1) (d)(i) of this section does not apply, the petitioner or prosecuting attorney shows good cause that the witness is material and that a deposition of the witness or the issuing of a subpoena or subpoena duces tecum is of assistance in order to substantiate or refute the petitioner's claim that there is a reasonable probability of an altered verdict.

{¶ 36} We first address whether the trial court erred in finding that amended R.C. 2953.21 does not apply to the case at bar because it is not retroactive. This is a strict legal issue which we review de novo. *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, ¶ 8; *State v. Gloff*, 12th Dist. Clermont No. CA2019-06-047, 2020-Ohio-3143, ¶ 17.

{¶ 37} It is well settled that a statute is presumed to apply prospectively unless

expressly declared to be retroactive. R.C. 1.48. Additionally, Section 28, Article II of the Ohio Constitution, prohibits the General Assembly from passing retroactive laws. Applying these two provisions, the Supreme Court of Ohio has established a two-part test to determine whether a statute may be applied retroactively. *Consilio.*

{¶ 38} Under this test, a reviewing court must first determine as a threshold matter whether the statute is expressly made retroactive. *Consilio*, 2007-Ohio-4163 at ¶ 10. "The General Assembly's failure to clearly enunciate retroactivity ends the analysis and the relevant statute may be applied only prospectively." *Id.* If, however, the General Assembly expressly indicated its intention that the statute apply retroactively, the reviewing court must then move to the second step of the analysis and "determine whether the statute is remedial, in which case retroactive application is permitted, or substantive, in which case retroactive application is forbidden." *State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, ¶ 27.

{¶ 39} As the trial court properly found, R.C. 2953.21(A)(1)(d) as amended does not explicitly state it is to be applied retroactively. "A statute must clearly proclaim its own retroactivity to overcome the presumption of prospective application. Retroactivity is not to be inferred." *Consilio* at ¶ 15. "If the retroactivity of a statute is not expressly stated in plain terms, the presumption in favor of prospective application controls. Moreover, the General Assembly is presumed to know that it must include expressly retroactive language to create that effect, and it has done so in the past." *Id.* Because amended R.C. 2953.21(A)(1)(d) does not expressly mention retroactivity, we find that the statute applies prospectively and we need not determine whether the statute is remedial or substantive under the second prong of the test.

{¶ 40} We further find that by its plain terms the statute applies prospectively to pending PCR petitions in that it allows capital petitioners to obtain discovery, for good cause

- 13 -

shown, "at any time in conjunction with the filing of a [PCR petition], *or with the litigation of a petition so filed*[.]" (Emphasis added.) In the case at bar, amended R.C. 2953.21(A)(1)(d) was not yet in effect when Myers filed his PCR petition. However, the PCR petition was still being litigated on April 6, 2017, when the amended statute became effective. Amended R.C. 2953.21(A)(1)(d), therefore, applies to Myers' PCR petition. *See Gloff*, 2020-Ohio-3143.

{¶ 41} The statute requires that the petitioner demonstrate "good cause" as a prerequisite for a trial court to allow discovery. As stated above, the trial court alternatively found that Myers failed to show "good cause."

{¶ 42} "Good cause" is not defined by the statute. Consequently, the trial court adopted the definition applied in federal habeas corpus proceedings, to wit, good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is * * * entitled to relief, it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry." *Bracy v. Gramley*, 520 U.S. 899, 908-909, 117 S.Ct. 1793 (1997). "Conversely, where a petitioner would not be entitled to relief on a particular claim, regardless of what facts he developed, he cannot show good cause for discovery on that claim." *Murphy v. Bradshaw*, S.D.Ohio No. C-1-03-053, 2003 U.S. Dist. LEXIS 15978, *2 (Sept. 13, 2003).

{¶ 43} Before determining whether a petitioner is entitled to discovery under "good cause," the court must first identify the essential elements of the claim on which discovery is sought. *Bracy* at 904. The burden of demonstrating the materiality of the information requested is on the moving party. *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir.2001). Discovery may be allowed where the petitioner's claims are "neither patently frivolous nor palpably incredible" and where "the discovery he requests is specific, limited, and reasonably calculated to lead to evidence in support of his claim[.]" *Hill v. Mitchell*, S.D.Ohio

No. 1:98-cv-452, 2007 U.S. Dist. LEXIS 71975, *31-32 (Sept. 27, 2007). A petitioner is not entitled to go on a fishing expedition based on conclusory allegations. *Id.* at *5; *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir.2004). "Even in a death penalty case, 'bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require an evidentiary hearing.'" *Stanford* at 460. Rather, the petitioner must set forth specific allegations of fact. *Williams* at 974.

{¶ 44} Myers argues that the trial court erred in denying his motions for discovery because he demonstrated "good cause" or, alternatively, set forth operative facts outside the record that revealed constitutional errors. Myers further argues that the trial court misapplied the *Bracy* good cause standard by essentially requiring him to prove his claims as a prerequisite to discovery.

{¶ 45} Myers' discovery motions were broad overall, seeking a wide range of information, records, and depositions of individuals, some of whom were identified only by category. The trial court broke down Myers' discovery requests into nine general categories of inquiry: (1) records in the custody of the Warren County Children's Services, the Warren County Department of Job and Family Services, and the Warren County Juvenile Court regarding Myers' family, (2) Myers' records from the Warren County Jail, (3) grand jury proceedings, (4) Mosley's institutional records, (5) records of the prosecutor's office and several law enforcement agencies relating to their investigation of Back's death and the arrest of Myers and Mosley, (6) depositions of law enforcement officers, (7) depositions of the jurors, (8) depositions of the attorneys on the prosecution team, and (9) depositions of the defense team.

{¶ 46} Myers' first motion for discovery did not identify how his discovery requests related to his postconviction claims. By contrast, the supplemental motion for discovery argued that Myers was entitled to conduct discovery on (1) his claims of ineffective

assistance of counsel during the guilt phase of the trial, (2) his claims of ineffective assistance of counsel during the penalty phase of the trial, and (3) his claims challenging the constitutionality and propriety of the death sentence for an offender who was still a teenager at the time of the offense. In his brief, Myers argues the trial court erred in denying his motions for discovery on the foregoing claims. We will address the trial court's denial of Myers' discovery motions concerning his claims of ineffective assistance of counsel during the penalty phase of the trial in conjunction with Myers' fifth assignment of error.

{¶ 47} Myers first argues that the trial court erred in denying his motions for discovery regarding his claims challenging the constitutionality and propriety of the death sentence for a 19-year-old offender at the time of the offense. In support of these constitutional challenges, Myers sought discovery of (1) the Warren County's training and instructional materials for judges, prosecutors, and sheriff deputies concerning behavioral characteristics and brain development of juveniles, adolescents, and late-adolescents (18-21 years old) offenders, and (2) Warren County's data concerning the prosecution of such juvenile, adolescent, and late-adolescent offenders for the previous seven years.

{¶ 48} We find that Myers' requested discovery falls more into the category of a fishing expedition. Furthermore, as we discuss in the fourth assignment of error, Myers' claims are barred by res judicata and fail to set forth sufficient operative facts to establish substantive grounds for relief, given the election of the United States Supreme Court and Ohio Supreme Court not to extend the ban on the death penalty to individuals who are over the age of 18 at the time of the crime. "[W]here a petitioner would not be entitled to relief on a particular claim, regardless of what facts he developed, he cannot show good cause for discovery on that claim." *Murphy*, 2003 U.S. Dist. LEXIS 15978 at *2. The trial court, therefore, did not err in denying Myers' motions for discovery regarding his claims challenging the constitutionality and propriety of the death sentence for a 19-year-old

offender at the time of the offense.

{¶ 49} Myers next argues that the trial court erred in denying his motions for discovery concerning his claims of ineffective assistance of counsel during the guilt phase of the trial. Counsel's alleged ineffective assistance included the failure to (1) pursue a youth-based defense theory, (2) hire a fact investigator, (3) fully cross-examine Mosley, (4) cross-examine a sergeant and a detective regarding their failure to follow police procedure manuals, (5) present the testimony of a crime scene expert, (6) present the testimony of a police procedure expert to challenge *Miranda* issues, (7) present the testimony of an expert to evaluate Myers' understanding of his *Miranda* rights, (8) achieve a change of venue, and (9) challenge the chain of custody of Mosley's notebook. As we discuss in the sixth assignment of error, Myers' claims regarding the testimony of a police procedure expert to challenge *Miranda* issues, change of venue, and the chain of custody of Mosley's notebook are barred by res judicata as they could have been raised on direct appeal to the Ohio Supreme Court. As we further discuss in the sixth assignment of error, Myers' other claims fail to set forth sufficient operative facts to establish substantive grounds for relief. *Murphy* at *2. The trial court, therefore, did not err in denying Myers' motions for discovery concerning his claims of ineffective assistance of counsel during the guilt phase of the trial.

{¶ 50} To that extent, Myers' second and third assignments of error are overruled.

### D. Constitutional Challenges

{¶ 51} Assignment of Error No. 4:

{¶ 52} THE TRIAL COURT ERRED, AND DENIED MYERS DUE PROCESS AND AN ADEQUATE CORRECTIVE PROCESS, WHEN IT FOUND PROCEDURALLY BARRED MYERS' CLAIMS CHALLENGING THE CONSTITUTIONALITY, PROPRIETY, AND/OR PROPORTIONALITY OF A DEATH SENTENCE FOR AN OFFENDER, LIKE MYERS, WHO WAS STILL A TEENAGER AT THE TIME OF HIS OFFENSE (GROUNDS

5, 8, 9, 46, 47, 48), AND IN SUMMARILY DISMISSING SUCH CLAIMS UNDER R.C. 2953.21(C) WITHOUT ALLOWING DISCOVERY OR AN EVIDENTIARY HEARING AND IN FAILING TO GRANT RELIEF.

{¶ 53} Myers argues that the trial court erred in summarily dismissing Grounds 5, 8, 9, 46, 47, and 48 of his PCR petition, all of which challenged the constitutionality, propriety, and/or proportionality of a death sentence for an offender, like Myers, who was a teenager at the time of the offense. In this assignment of error, Myers details the scientific research on adolescent brain development, references various cases acknowledging that young adults under the age of 21 share many of the characteristics of late-age adolescents, and argues that the imposition of a death sentence upon a teenage offender, such as him, is an unconstitutionally cruel and unusual punishment. Myers asserts that a cut-off of age 18 for imposing a death penalty is arbitrary. Myers further asserts his death sentence is unconstitutionally disproportionate to the life sentence Mosley received.

{¶ 54} Ground 5 argues that R.C. 2929.04(A)(7), Ohio's felony-murder statute, is unconstitutional because it fails to adequately account for youth in violation of the Eighth Amendment. Ground 8 argues that the death sentence was disproportionate compared to Mosley and others convicted of similar crimes in violation of Myers' Eighth Amendment rights. Ground 9 argues that Myers' death sentence was void because the trial court failed to consider the R.C. 2929.11 purposes of felony sentencing when determining the appropriateness of the death sentence on the capital specifications. Ground 46 argues that Myers' Eighth Amendment rights were violated because the trial court failed to accord his youth the mitigating value it deserved. Ground 47 argues that the death penalty was a disproportionate punishment for Myers given his youth and other individual characteristics. Ground 48 argues that the death penalty is per se unconstitutional for a youthful offender convicted of committing a crime prior to turning 21 years old.

{¶ 55} The trial court dismissed Grounds 8 and 9, finding that both arguments were raised in Myers' direct appeal to the Ohio Supreme Court, were addressed by the supreme court, and were therefore barred by res judicata. The trial court further dismissed Grounds 5 and 46 through 48 as follows:

> The Ohio Supreme Court has already addressed whether the sentence of death for Myers based on his age is a violation of the Eighth Amendment and found that it is not a violation of his constitutional rights. Therefore, this argument is barred by res judicata.
>
> Further, the Supreme Court of the United States has addressed the age of youthful offenders in a number of contexts and has not chosen to extend the ban on the death penalty to individuals who are over the age of eighteen at the time of the crime. [Myers] has submitted evidence related to the development in brain science, however, the Ohio Supreme Court and the United States Supreme Court have considered these new developments and similar arguments to the ones set forth by [Myers]. The United States Supreme Court acknowledged that individuals over eighteen may still exhibit signs of a juvenile but also found that since eighteen is the line society draws for many purposes between childhood and adulthood, that was the age that the line for death penalty ought to rest. *Roper v. Simmons*, 543 U.S. 551, 574, 125 S.Ct. 1183, 1197-98 (2005).

{¶ 56} We find that the trial court properly dismissed Grounds 5, 8, 9, and 46 through 48. On direct appeal to the supreme court, Myers argued that the death sentence violated the Eighth Amendment proscription of cruel and unusual punishment, given recent decisions of the United States Supreme Court and a growing body of new developments in brain science indicating that age 18 is not the proper cut-off point for the death penalty. Myers further argued that his death sentence was comparatively disproportionate to the life sentence Mosley received and that he should not have been sentenced to death because he was a 19-year-old immature adolescent with mental and youth-related behavioral issues when he committed his crimes. The supreme court addressed and rejected these claims. *Myers*, 2018-Ohio-1903 at ¶ 173-176. They are therefore barred by res judicata.

{¶ 57} Myers' other claims were properly dismissed by the trial court as failing to set forth sufficient operative facts to establish substantive grounds for relief, given the election of the United States Supreme Court and Ohio Supreme Court not to extend the ban on the death penalty to individuals who are over the age of 18 at the time of the crime. Myers notes that while his direct appeal made a brief reference to the newer brain science, it did not make the constitutional claim for a *Roper*-extension that his PRC petition makes. *See Myers* at ¶ 176 ("Although Myers argues that new developments in brain science indicate that age 18 is not the 'proper cut off point for the death penalty,' he does not propose that the categorical exclusion for those under age 18 be extended to 19-year-olds"). However, such constitutional argument was recently addressed and rejected by the Ohio Supreme Court in *State v. Graham*, Slip Opinion No. 2020-Ohio-6700.

{¶ 58} Graham, who turned 19 years old the month before he committed his crimes and who was sentenced to death, argued that imposing a death sentence on a capital defendant who was under the age of 21 at the time of the crime violated the Eighth Amendment. Extrapolating from the United States Supreme Court's *Roper* decision, Graham argued that it was possible the Supreme Court could extend *Roper* to find that a defendant who turned 19 the month before committing the offense is constitutionally barred from receiving a death sentence. The Ohio Supreme Court squarely rejected the argument: "[B]ecause the United States Supreme Court has drawn the line at 18 for Eighth Amendment purposes, state courts are not free to invoke the Eighth Amendment as authority for drawing it at a higher age. * * * *Roper* is controlling, and we must follow it." *Graham* at ¶ 182, citing *In re Phillips*, 6th Cir. No. 17-3729, 2017 U.S. App. LEXIS 17766 (July 20, 2017) (no authority exists at the present time to support the argument that a defendant who was 19 years old at the time of the offense is ineligible to receive a death sentence).

{¶ 59} Myers' fourth assignment of error is overruled.

{¶ 60} Assignment of Error No. 9:

{¶ 61} THE TRIAL COURT ERRED, AND DENIED MYERS DUE PROCESS AND AN ADEQUATE CORRECTIVE PROCESS, WHEN IT FOUND PROCEDURALLY BARRED MYERS' CLAIMS CHALLENGING IN MULTIPLE RESPECTS THE CONSTITUTIONALITY OF OHIO'S DEATH PENALTY STATUTE AND SYSTEMS (GROUNDS 2-4, 7, 57), AND IN SUMMARILY DISMISSING SUCH CLAIMS UNDER R.C. 2953.21(C) WITHOUT ALLOWING DISCOVERY OR AN EVIDENTIARY HEARING AND IN FAILING TO GRANT RELIEF.

{¶ 62} Myers argues the trial court erred in summarily dismissing Grounds 2, 3, 4, 7, and 57 of his PCR petition, all of which challenged the constitutionality of Ohio's death-penalty scheme and the statutes governing it.  Specifically, Myers argues that Ohio's death-penalty scheme (1) is per se unconstitutional due to several fundamental constitutional defects, (2) is unconstitutional because it allows racial disparities in capital indictment practices and the actual infliction of the death penalty, (3) is incompatible with modern standards of decency, and (4) violates the Sixth Amendment right to a jury trial under *Hurst v. Florida*, 577 U.S. 92, 136 S.Ct. 616 (2016).  Myers further argues that R.C. 2929.04(A)(7), Ohio's felony-murder statute, is unconstitutional as a capital specification because it allows for invidious racial discrimination in its application and fails to provide adequate safeguards to ensure only the most culpable offenders are sentenced to death.

{¶ 63} Myers' claims are barred by res judicata as they were either raised or could have been raised in his direct appeal to the Ohio Supreme Court.  *Myers*, 2018-Ohio-1903 at ¶ 201-202.  This includes his Sixth Amendment argument under *Hurst* as his merit brief was filed in the supreme court four months after *Hurst* was decided.  Myers acknowledges that the supreme court "has thus far been unwilling to conclude that Ohio's death penalty

- 21 -

statute is unconstitutional under the U.S. and/or Ohio constitutions in the respect alleged * * * in these Grounds." *See, e.g., Myers*; *State v. Mason*, 153 Ohio St.3d 476, 2018-Ohio-1462; *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942. In December 2020, the supreme court once again held that Ohio's death-penalty scheme was not unconstitutional under *Hurst. Graham*, 2020-Ohio-6700 at ¶ 185-186.

{¶ 64} Myers' ninth assignment of error is overruled.

{¶ 65} Assignment of Error No. 11:

{¶ 66} THE TRIAL COURT ABUSED ITS DISCRETION, AND COMMITTED AN ERROR OF LAW, WHEN IT DENIED MYERS RELIEF ON HIS FIRST GROUND FOR RELIEF, BECAUSE OHIO'S POSTCONVICTION PROCEDURES FAIL TO PROVIDE DEATH-SENTENCED PETITIONERS WITH AN ADEQUATE CORRECTIVE PROCESS AND THEY VIOLATE THE FEDERAL AND STATE CONSTITUTIONS.

{¶ 67} Myers argues that Ohio's statutory scheme for postconviction relief is unconstitutional because it does not provide an adequate corrective process due to its "rigid" reliance on principles of res judicata and a petitioner's inability to conduct discovery until convincing a trial court that a hearing is warranted. This court has already determined that "the statutory procedure for postconviction relief constitutes an adequate corrective process." *State v. Lindsey*, 12th Dist. Brown No. CA2002-02-002, 2003-Ohio-811, ¶ 13; *State v. Lawson*, 12th Dist. Clermont No. CA2013-12-093, 2014-Ohio-3554, ¶ 43. Other Ohio appellate courts have likewise rejected the claim that Ohio's postconviction relief statute does not afford an adequate corrective process. *See, e.g. State v. Conway*, 10th Dist. Franklin No. 17AP-504, 2019-Ohio-2260. Furthermore, the propriety of resolving a postconviction petitioner's arguments on the basis of res judicata is well settled. *E.g.*, *Szefcyk*, 77 Ohio St.3d 93. We see no reason to deviate from our prior precedent. *Lawson.*

{¶ 68} Myers' eleventh assignment of error is overruled.

## E. Merits of Myers' Grounds for Relief

## 1. Prosecutorial Misconduct

{¶ 69} Assignment of Error No. 7:

{¶ 70} THE TRIAL COURT ERRED, AND DENIED MYERS DUE PROCESS AND AN ADEQUATE CORRECTIVE PROCESS, WHEN IT SUMMARILY DISMISSED, UNDER R.C. 2953.21(C) AND RULE 12, MYERS' CLAIMS OF PROSECUTORIAL MISCONDUCT (GROUNDS 50, 58), WITHOUT ALLOWING DISCOVERY OR AN EVIDENTIARY HEARING AND IN FAILING TO GRANT RELIEF.

{¶ 71} Myers argues the trial court erred in summarily denying Grounds 50 and 58 of his PCR petition which allege prosecutorial misconduct.

{¶ 72} For a conviction to be reversed on the basis of prosecutorial misconduct, a defendant must prove the prosecutor's comments were improper and that they prejudicially affected the defendant's substantial rights. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 62; *McKelton*, 2015-Ohio-4228 at ¶ 13. However, "[t]he focus of an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon culpability of the prosecutor." *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 56. Therefore, "[p]rosecutorial misconduct is not grounds for error unless the defendant has been denied a fair trial." *State v. Olvera-Guillen*, 12th Dist. Butler No. CA2007-05-118, 2008-Ohio-5416, ¶ 27, citing *State v. Maurer*, 15 Ohio St.3d 239 (1984).

{¶ 73} We first address Myers' averment that "the late and questionable disclosure of Mosley's notebook may very well have been the result of prosecutorial misconduct."

{¶ 74} R.C. 2953.21(A)(4) requires a petitioner to "state in the original or amended petition filed under division (A) of this section all grounds for relief claimed by the petitioner." Except as provided in R.C. 2953.23, inapplicable here, "any ground for relief that is not so stated in the petition is waived." R.C. 2953.21(A)(4); *State v. Lawrence*, 12th Dist. Butler

Nos. CA2017-06-078 and CA2019-03-048, 2020-Ohio-855, ¶ 17.  Myers did not raise this claim of prosecutorial misconduct in his PCR petition and has therefore forfeited it.  *State v. Zeune*, 10th Dist. Franklin No. 13AP-147, 2013-Ohio-4156, ¶ 30; *State v. Barb*, 8th Dist. Cuyahoga No. 94054, 2010-Ohio-5239, ¶ 25; *State v. McKee*, 9th Dist. Lorain No. 96CA006599, 1997 Ohio App. LEXIS 4433, *9 (Oct. 1, 1997) (failure to raise issue in PCR petition results in a waiver of the right to assert the issue on appeal).

{¶ 75} Ground 50 alleges that Myers' due process rights were violated when privileged attorney-client discussions were potentially broadcast throughout the courthouse and into the prosecutor's office via the trial court's audio/video recording system.  In his brief, Myers asserts the fact that conversations from the defense table could be broadcast in such a manner should cause "great concern about whether any privileged conversations were 'overheard,' whether any were recorded, whether someone took notes of what they heard, [and] whether such information was utilized by the State in any fashion[.]"

{¶ 76} Myers does not identify the resulting prejudice.  The trial court sua sponte addressed the issue at a pretrial hearing in August 2014, subsequently conducted an evaluation of its audio/video recording system to make sure that conversations taking place at the defense table could not be heard by others, and provided a copy of that evaluation to counsel.  In dismissing Ground 50, the trial court found "NO evidence that any conversation of counsel was ever overheard," noted its investigation into the issue, and "determined that the mute button was sufficient to prevent anyone from overhearing any conversation between counsel and the petitioner."  Furthermore, this issue could have been raised on direct appeal to the Ohio Supreme Court and is therefore barred by res judicata. The trial court did not err in dismissing Ground 50.

{¶ 77} Ground 58 alleges that the elected prosecutor engaged in misconduct by extensively posting about the case on his county prosecutor Facebook and Twitter accounts

during and after the trial and via statements he made in an interview during a 2016 BBC documentary. Ground 58 further alleges that Myers was prejudiced by the prosecutor's misconduct. The trial court dismissed the ground, finding that Myers "failed to establish sufficient operative facts to establish substantive grounds for relief." In his brief, Myers asserts that the prosecutor's social media postings and interview "tainted" his right to a fair trial.

{¶ 78} We find that the trial court did not err in dismissing Ground 58. The prosecutor's post-trial social media posts, post-trial media statements, and statements in the 2016 BBC documentary are irrelevant and could not and did not deprive Myers of a fair trial. Regarding the prosecutor's social media postings and statements that occurred before and during trial, Myers does not articulate how any specific post or media statement prejudiced his right to a fair trial. A review of the posts and statements shows that they were restricted to providing the public with information about the criminal proceedings against Myers and communicated the results of various stages of the criminal proceedings against Myers either directly or by sharing links to news headlines. Following the guilty verdict, the prosecutor simply recognized Back's family and the efforts of the investigators and his office.

{¶ 79} Furthermore, the trial court repeatedly admonished the jurors not to view or listen to any news reports in any form. We presume the jury followed the trial court's admonitions unless it is demonstrated otherwise. *State v. Miller*, 12th Dist. Preble No. CA2019-11-010, 2021-Ohio-162, ¶ 50. Myers has not introduced any evidence to the contrary. Prejudice to a defendant will not be presumed in the absence of proof of jury exposure to possibly prejudicial news reports, or in this case, the prosecutor's social media posts. *See State v. Wright*, 3d Dist. Crawford No. 3-92-24, 1994 Ohio App. LEXIS 6090 (Dec. 30, 1994).

{¶ 80} Finally, this issue could have been raised by Myers in his direct appeal to the Ohio Supreme Court. We note that Myers actually did allege claims of prosecutorial misconduct as part of his direct appeal under his tenth proposition of law. Res judicata applies to any issue that could have been raised on direct appeal, including a claim alleging prosecutorial misconduct. *McKelton*, 2015-Ohio-4228 at ¶ 23, citing *State v. Zych*, 12th Dist. Clermont No. CA97-02-012, 1997 Ohio App. LEXIS 4731 (Oct. 27, 1997). Myers fails to identify any reason why this claim of prosecutorial misconduct could not have been raised on direct appeal. Myers does not assert he learned about the prosecutor's social media posts after filing his direct appeal. Nor does he allege the posts were not known or available at the time of trial or his direct appeal. *Dillingham*, 2012-Ohio-5841 at ¶ 10.

{¶ 81} Myers' seventh assignment of error is overruled.

**2. Trial Court Rulings**

{¶ 82} Assignment of Error No. 8:

{¶ 83} THE TRIAL COURT ERRED, AND DENIED MYERS DUE PROCESS AND AN ADEQUATE CORRECTIVE PROCESS, WHEN IT SUMMARILY DISMISSED, UNDER R.C. 2953.21(C) AND RULE 12, MYERS' CLAIMS OF TRIAL COURT ERRORS IN MULTIPLE RESPECTS (GROUNDS 51-56, 59), WITHOUT ALLOWING DISCOVERY OR AN EVIDENTIARY HEARING AND IN FAILING TO GRANT RELIEF.

{¶ 84} Myers argues the trial court erred in summarily dismissing Grounds 51 through 56 and 59 of his PCR petition, all of which challenged several trial court's rulings.

{¶ 85} Ground 51 challenges the trial court's failure to grant a continuance of the trial date to allow defense counsel to obtain a mitigation specialist. This issue involves lead defense counsel's request to have his wife appointed as a mitigation specialist, which was initially denied by the trial court. After he was unable to find another mitigation specialist, lead counsel moved the trial court to reconsider its previous ruling. *Alternatively*, counsel

moved the court for a continuance of the trial date. The trial court reconsidered its previous denial, appointed lead counsel's wife as the mitigation specialist, and denied the alternative request for continuance. The trial court did not err in dismissing Ground 51.

{¶ 86} Ground 52 challenges the trial court's failure to grant a continuance of the trial date to allow defense counsel to investigate Mosley's notebook after it was disclosed to the defense the day before trial was to commence. Ground 53 challenges the trial court's admission of the notebook into evidence and its failure to instruct the jury on the break in the chain of custody. The notebook was discovered in Mosley's home eight months after the original search warrant was executed. On direct appeal, the Ohio Supreme Court addressed the state's delayed disclosure of the notebook, the trial court's denial of defense counsel's motion for a continuance, and the admissibility of the notebook into evidence. *Myers*, 2018-Ohio-1903 at ¶ 86-93, 112-120. In his direct appeal, defense counsel did not challenge the trial court's failure to instruct the jury on chain of custody. Because the issues above could have been or were raised on direct appeal to the supreme court, they are barred by res judicata. The trial court did not err in dismissing Grounds 52 and 53.

{¶ 87} Grounds 54 and 55 challenge the trial court's denial of Myers' motion to suppress his "involuntary" statements to Detective Michael Wyatt where he "did not understand his *Miranda* rights and never signed a *Miranda* waiver." In support of these grounds, Myers submitted the reports of Gary Rini, a crime scene/police procedure expert, and Dr. Drew Barzman, a psychiatrist. Upon reviewing Myers' videotaped police interrogations, Rini concluded that Myers "was clearly confused and befuddled during his questioning" and was "therefore apparently unable to appreciate the gravity of his situation, nor was he aware of the constitutional rights afforded to him." Upon reviewing Myers' police interrogations, administering the Miranda Rights Comprehension Instruments test ("MCRI"), and reviewing comprehensive historical information regarding Myers, Dr. Barzman opined

that "due to his young age of 19, probable, but at that time untreated, Bipolar Disorder, and lack of experience with interrogations and the adult criminal justice system in general," Myers "was unable to adequately apply his *Miranda* rights at the time of the interrogations."

{¶ 88} On direct appeal, the supreme court overruled Myers' proposition of law relating to the trial court's denial of his motion to suppress and the claims that he never validly waived his right to remain silent, that he was denied his constitutional right to counsel, and that his statements were involuntary. *Myers*, 2018-Ohio-1903 at ¶ 61-82. In his brief, Myers asserts that the expert reports of Rini and Dr. Barzman "were necessary to substantiate the claim" his statements were not voluntarily made and were obtained in violation of *Miranda*. With the exception of the MCRI test, the same facts and historical information reviewed by Rini and Dr. Barzman were known and available to Myers at the time of his direct appeal to the supreme court. Myers, therefore, could have appealed his statements to police on the basis of his demeanor during questioning, his age, his "probable, but at that time untreated, Bipolar Disorder, and his lack of experience with interrogations and the adult criminal justice system in general," but did not. "A report not found in the record does not automatically equate to a valid issue for post-conviction review purposes where, as here, the issue could have been raised on direct appeal." *State v. Drummond*, 7th Dist. Mahoning No. 05 MA 197, 2006-Ohio-7078, ¶ 43. The trial court did not err in dismissing Grounds 54 and 55.

{¶ 89} Ground 56 challenges the trial court's denial of Myers' motion for change of venue based on the "overwhelming" pretrial media publicity regarding the case. Although Myers moved the trial court for a change of venue, he did not challenge the trial court's denial of his motion in his direct appeal to the Ohio Supreme Court. It is therefore barred by res judicata. *See McKelton*, 2015-Ohio-4228. The trial court did not err in dismissing Ground 56.

{¶ 90} Ground 59 challenges the trial court's failure to instruct the jury that Mosley's plea deal to a life sentence without parole was a mitigating factor. The record shows that the trial court did instruct the jury that, in addition to the specific statutory mitigation factors, it could consider any additional factors that were not specifically mentioned in favor of a sentence other than death. Defense counsel was allowed to and did argue Mosley's plea deal as a mitigating factor. Furthermore, this claim could have been raised on direct appeal to the supreme court and is therefore barred by res judicata. *See State v. Jennings*, 10th Dist. Franklin No. 17AP-248, 2018-Ohio-3871; *State v. Southers*, 12th Dist. Butler No. CA88-03-027, 1988 Ohio App. LEXIS 2720 (June 30, 1988). The trial court did not err in dismissing Ground 59.

{¶ 91} Myers' eighth assignment of error is overruled.

### 3. Ineffective Assistance of Counsel during the Guilt Phase

{¶ 92} Assignment of Error No. 6:

{¶ 93} THE TRIAL COURT ERRED, AND DENIED MYERS DUE PROCESS AND AN ADEQUATE CORRECTIVE PROCESS, WHEN IT SUMMARILY DISMISSED, UNDER R.C. 2953.21(C) AND RULE 12, MYERS' CLAIMS THAT HIS TRIAL COUNSEL RENDERED CONSTITUTIONALLY DEFICIENT PERFORMANCE IN THE TRIAL PHASE OF HIS CAPITAL TRIAL (GROUNDS 6, 10-18), WITHOUT ALLOWING DISCOVERY OR AN EVIDENTIARY HEARING, AND IN FAILING TO GRANT RELIEF ON THESE MERITORIOUS IAC CLAIMS.

{¶ 94} Myers argues the trial court erred in summarily dismissing Grounds 6 and 10 through 17 of his PCR petition, all of which allege numerous instances of ineffective assistance of counsel during the guilt phase of the trial.

{¶ 95} In order to establish a claim of ineffective assistance of counsel, it must be shown that an attorney's performance was deficient and that the deficient performance

prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In postconviction proceedings, a petitioner bears the initial burden of submitting evidentiary materials containing sufficient operative facts to demonstrate the lack of competent counsel and also that the defense was prejudiced by counsel's ineffectiveness. *State v. Jackson*, 64 Ohio St.2d 107, 111 (1980). Pursuant to the res judicata doctrine, a PCR petition may be dismissed where a petitioner, represented by new counsel on direct appeal, could have raised the ineffective assistance of trial counsel claim on direct appeal without resort to evidence outside the record. *State v. Lentz*, 70 Ohio St.3d 527 (1994), syllabus; *State v. Loza*, 12th Dist. Butler No. CA96-10-214, 1997 Ohio App. LEXIS 4574, *9-10 (Oct. 13, 1997). Additionally, mere presentation of evidence outside the record does not transform a claim into one addressable in postconviction. *Drummond*, 2006-Ohio-7078 at ¶ 17. The evidence must show that the petitioner could not have appealed his claim based upon the information in the original record. *Id*.

{¶ 96} Ground 6 alleges that counsel was ineffective because he failed to present a youth-based defense theory during the guilt phase of the trial in anticipation of the penalty phase. Myers asserts that his "youth, its specific effects on him, and its manifestation in the conduct alleged by the State at trial should have all formed a central, consistent theme presented during both phases of the trial." Counsel's defense theory during the guilt phase was that Mosley committed the murder, Myers was simply present during the crime, and Mosley subsequently turned on Myers by entering into a plea deal and testifying against him. This was consistent with the penalty phase during which defense counsel argued Myers' sentence should not be more severe than Mosley's sentence.

{¶ 97} The decision regarding which defense theory to pursue at trial is a matter of trial strategy, and trial strategy decisions are not the basis of a finding of ineffective assistance of counsel. *State v. Murphy*, 91 Ohio St.3d 516, 524, 2001-Ohio-112; *State v.*

*Kinsworthy*, 12th Dist. Warren No. CA2013-06-053, 2014-Ohio-1584, ¶ 43. Moreover, as the trial court noted when it dismissed Ground 6, the fact that another defense attorney may have or would have employed a different approach does not mean the alternative strategy fell below an objective standard of reasonableness. *State v. Casey*, 12th Dist. Butler No. CA2017-08-013, 2018-Ohio-2084, ¶ 34. "[T]here is a strong presumption that counsel has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Defense counsel's guilt-phase strategy will not be second-guessed even though appellate counsel now argue that they would have defended differently. *State v. Mason*, 82 Ohio St.3d 144, 169, 1998-Ohio-370. The trial court did not err in dismissing Ground 6.

{¶ 98} Ground 10 alleges that counsel was ineffective because he failed to hire a fact investigator even though the trial court had approved funds for an investigator. Lead defense counsel's affidavit submitted in support of the PCR petition indicates that counsel "ultimately did not retain" an investigator because the case was not a "who done it." Ground 11 alleges that counsel was ineffective because he failed to fully cross-examine Mosley. Myers asserts that an investigator would have discovered, inter alia, that Mosley was suffering from rage and depression in the days leading to Back's murder, suffered from severe drug addiction and had violent tendencies, and was not in the habit of taking notes in a notebook. The investigation would have further discovered that Mosley's cellphone records belied his trial testimony. Myers claims that this information could have been used to properly cross-examine Mosley and impeach his credibility.

{¶ 99} "The *Strickland* holding and the American Bar Association's Guidelines only require trial counsel to perform a reasonable investigation, not to hire an investigator." *State v. Hairston*, 9th Dist. Lorain No. 05CA008768, 2006-Ohio-4925, ¶ 36. "Further, '[a]n attorney's decision not to hire an investigator does not equate to a failure to investigate and

result in ineffective assistance of counsel.'" *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 247, quoting *Hairston* at ¶ 36. Defense counsel's failure to hire a fact investigator does not mean counsel did not investigate Mosley's background. The affidavits, reports, and records submitted by Myers in support of Ground 10 do not show a failure to investigate.

{¶ 100} Furthermore, as the Ohio Supreme Court specifically noted on direct appeal, defense counsel did cross-examine Mosley "vigorously and at length." *Myers*, 2018-Ohio-1903 at ¶ 186. Defense counsel's cross-examination of Mosley shows that counsel was very familiar with Mosley's statements to police and demonstrated his investigation and familiarity with personal facts about Mosley, including Mosley's substance abuse issues and the fact he engaged in illegal activity. Defense counsel's cross-examination elicited testimony that later allowed counsel to argue that Mosley was the principal offender, that he had a financial motive to commit the crimes, that he had a motive to keep his testimony consistent with his statements to Detective Wyatt because of his plea agreement, and that he lied to the police about Zennie to protect Zennie over Myers. Defense counsel's cross-examination of Mosley refutes any suggestion counsel did not investigate Mosley's background.

{¶ 101} Whether defense counsel discovered all of the information Myers identifies as topics of cross-examination is unknown. However, counsel's strategy was to cast Mosley as the leader who planned the crimes and executed them with little help from Myers and who was now turning on Myers to save himself. Some of the information that Myers suggests should have been a topic during Mosley's cross-examination is the same type of information which would have undermined Myers' mitigation strategy that Mosley bore primary responsibility for Back's murder. In this sense, portraying Mosley as suffering from depression and cocaine withdrawal at the time of the crime would have run counter to

defense counsel's strategy that Mosley was fully responsible for Back's murder. In addition, in light of the overwhelming evidence of Myers' guilt and the fact that Mosley's testimony regarding his and Myers' actions on the days leading to and culminating in the murder was corroborated by third-party witnesses, there is no reasonable probability Myers would have been acquitted of the charges. The trial court did not err in dismissing Grounds 10 and 11.

{¶ 102} Ground 12 challenges counsel's failure to cross-examine Sergeant Jeff Garrison of the Clayton Police Department and Detective Wyatt during the hearing on Myers' motion to suppress and at trial regarding their failure to follow their respective police procedure manual in handcuffing Myers when he was only wanted for an interview. Myers asserts that had counsel used the manuals when cross-examining the officers, this would have aided in showing that Myers was "effectively seized" when he was handcuffed and would have tarnished the officers' credibility.

{¶ 103} The record shows that it was Clayton police officers who handcuffed Myers and placed him in the back seat of a Clayton police cruiser after he was located at Mosley's home. At the time, Myers was a suspect who was detained at the request of the Warren County Sheriff's Office. The Clayton Police Department manual allows one to be restrained when the officer can articulate a need to handcuff for safety reasons. The sergeant's testimony at the suppression hearing indicates that Myers was handcuffed for safety reasons and to prevent him from running. Detective Wyatt's testimony reveals that the detective did not direct that Myers be handcuffed, and that in fact, he directed that the handcuffs be removed after he discovered that Myers was handcuffed.

{¶ 104} Furthermore, as the trial court found, the extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel. *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 146. Even assuming, arguendo, that defense counsel was deficient in failing

to use the manuals when he cross-examined the officers, Myers fails to establish that, but for counsel's error, a reasonable probability exists that the result of the suppression hearing and his trial would have been different. The trial court did not err in dismissing Ground 12.

{¶ 105} Ground 13 alleges that counsel was ineffective because he failed to present a crime scene expert testimony to question the veracity of Mosley's notebook and rebut such evidence. The notebook was discovered in Mosley's home eight months after the original search warrant was executed in January 2014. In support of Ground 13, Myers submitted Rini's report. The report indicates that photographs taken during the January 2014 search of Mosley's home do not show the notebook at all, nor was the notebook mentioned in any investigative report generated as a result of the January 2014 search of Mosley's home. Rini's report states that the "discovery" of the notebook "eight months later, during a warrantless search in a location previously photographed during the January [2014] search, draws into question the legitimacy of the 'find' by investigating officers." Thus, "[i]t is not unwarranted for one to conclude the possibility that the [notebook] was not, in fact present during the original crime scene search, and may have been placed at the scene sometime after the search was completed."

{¶ 106} "As an initial matter, the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 66. Further, even if the wisdom of such an approach is debatable, "debatable trial tactics" do not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980). Defense counsel cross-examined Mosley upon all issues identified in Rini's report and revisited those issues in closing argument. Detective Wyatt testified the notebook was found where Mosley said it would be. The trial court did not err in dismissing Ground 13.

{¶ 107} Ground 14 alleges that counsel was ineffective because he failed to present

a police procedure expert such as Rini to challenge *Miranda* issues. Myers asserts that Rini could have testified, based on his review of Myers' police interrogations, that Myers was "clearly confused" during questioning, that Detective Wyatt did not adequately explain the *Miranda* warnings to Myers, and that the detective provided Myers with inaccurate information concerning how he could obtain an attorney. Ground 15 alleges that counsel was ineffective because he failed to present an expert to evaluate Myers' understanding of his *Miranda* rights. In support of this ground, Myers submitted the report of Dr. Barzman. Upon reviewing Myers' police interrogations, administering the MCRI test, and reviewing comprehensive historical information regarding Myers, Dr. Barzman opined that "due to his young age of 19, probable, but at that time untreated, Bipolar Disorder, and lack of experience with interrogations and the adult criminal justice system in general," Myers "was unable to adequately apply his *Miranda* rights at the time of the interrogations."

{¶ 108} During the suppression hearing defense counsel's cross-examination of Detective Wyatt addressed the issues raised in Rini's report, and the videotapes of Myers' interrogations were played and admitted into evidence. The videotapes were likewise played to the jury and admitted into evidence at Myers' trial. The trial court denied Myer's motion to suppress, finding that Myers validly waived his *Miranda* rights. The trial court further found that, based on the totality of the evidence, Myers understood the nature of his *Miranda* rights and the consequences in declining to exercise them. In his direct appeal to the Ohio Supreme Court, Myers challenged the validity of his *Miranda* waiver and argued that counsel was ineffective during the guilt phase of his trial. Myers' alleged confusion during police questioning, Detective Wyatt's explanation to Myers of the *Miranda* warnings and the information he provided Myers concerning how to retain an attorney, and counsel's alleged ineffectiveness in failing to present expert testimony to challenge *Miranda* issues were cognizable and could have been raised on direct appeal based solely on the original

record. Rini's report does not constitute evidence outside the record as Myers asserts. Myers' argument is therefore barred by res judicata. *See State v. Dempsey*, 8th Dist. Cuyahoga No. 76386, 2000 Ohio App. LEXIS 2628 (June 15, 2000); *State v. Holloway*, 1st Dist. Hamilton No. C-900805, 1992 Ohio App. LEXIS 283 (Jan. 29, 1992). The trial court did not err in dismissing Ground 14.

{¶ 109} The trial court dismissed Ground 15, finding that "even if the defense had requested an expert to evaluate Myers['] understanding of his *Miranda* rights, based on the evidence presented at the motion to suppress hearing it is unlikely that the Court would have granted that request since the Court denied the motion to suppress." The trial court further found that "[t]he failure to request a * * * police procedures expert or another expert to challenge *Miranda* issues was not such an error as to deny [Myers'] constitutional rights. [Myers] was not entitled to any such expert[.]" Thus, the trial court found that even considering Dr. Barzman's report, Myers failed to set forth sufficient operative facts establishing a substantive ground for relief.

{¶ 110} The MRCI administered by Dr. Barzman in October 2016 is the updated version of the Thomas Grisso's Instruments for Assessing Understanding & Appreciation of Miranda Rights, commonly referred to as the Grisso test. The test specifically assesses a person's capacity to understand and appreciate *Miranda* rights at the time of the evaluation. *Garner v. Mitchell*, 557 F.3d 257, 266 (6th Cir.2009). The test consists of four subtests, called "instruments": Comprehension of *Miranda* Rights (CMR), Comprehension of *Miranda* Rights – Recognition (CMR-R), Function of Rights in Interrogation (FRI), and Comprehension of *Miranda* Vocabulary (CMV). *Id.*; *State v. Higgins*, 7th Dist. Jefferson No. 12 JE 11, 2013-Ohio-2555, ¶ 43.

{¶ 111} Myers' scores were within the range for 19-year-old individuals with a verbal IQ of 101 to 110 in the first three instruments; his score of 29 out of 32 in the fourth

instrument (CMV) was good in comparison to 19-year-old individuals with a verbal IQ of 101 to 110. As stated above, the Grisso test purports to assess one's capacity to understand the *Miranda* warnings only at the time of the evaluation, not at the time the warnings were given. *Garner* at 270. The test does not purport to measure the validity of the waiver of *Miranda* rights or legal competence to waive *Miranda* rights. *Id.* at 269. In his report Dr. Barzman admitted the limited usefulness of Myers' scores "since his interrogations were almost 3 years ago[.]" Nonetheless, Dr. Barzman opined that "[b]ased on his responses to the [test], it is evident that Austin currently understands the words of the *Miranda* Rights but he had problems with applying his rights. Although [he] appeared to have average to above average intelligence, he did not have the 'street smarts' three years ago to actually apply his *Miranda* Rights under intense stress."

{¶ 112} Myers' scores indicate he did understand his *Miranda* rights. Myers was interviewed five times by Detective Wyatt. *Miranda* warnings were not required during the first interview as Myers was not in custody. Detective Wyatt administered *Miranda* warnings to Myers on three separate times; each time Myers stated he understood them. Myers invoked his right to counsel in the second interview and the detective ended the interview. Myers sought to re-initiate questioning during a third interview but was rebuffed because he had invoked his right to counsel. Myers subsequently re-initiated questioning during a fourth interview, was administered the *Miranda* warnings again, and provided a statement. Detective Wyatt administered the *Miranda* warnings for a third time before the fifth interview. Myers indicated he understood them and answered the detective's questions. On direct appeal, the Ohio Supreme Court found that Myers understood his *Miranda* rights, which was further demonstrated by his invocation of his right to counsel. *Myers*, 2018-Ohio-1903 at ¶ 69-71. The trial court did not err in dismissing Ground 15.

{¶ 113} Ground 16 alleges that counsel was ineffective because he failed to support

the motion for a change of venue with news articles evidencing the extraordinary amount of pretrial publicity, failed to renew the motion after voir dire, and ultimately failed to achieve a change of venue. The trial court dismissed Ground 16, finding that the motion for change of venue was initially denied subject to reconsideration if a jury could not be empaneled in accordance with *State v. Lundgren*, 73 Ohio St.3d 474, 1995-Ohio-227. The motion was subsequently denied after the trial court was able to successfully seat a jury in accordance with *Lundgren*. Juror questionnaires submitted in support of Ground 16 indicate that six of the 12 jurors had seen or heard pretrial news coverage of the case. All jurors indicated that they could and would decide the case based solely on the evidence presented at trial. Furthermore, although Myers alleged claims of ineffective assistance of counsel during the guilt phase as part of his direct appeal to the Ohio Supreme Court, he did not challenge defense counsel's failure to achieve a change of venue. It is therefore barred by res judicata. *See Piesciuk*, 2013-Ohio-3879. The trial court did not err in dismissing Ground 16.

{¶ 114} Ground 17 alleges that counsel was ineffective because he failed to challenge the chain of custody of Mosley's notebook either through cross-examination of the state's witnesses or by expert testimony. As stated above, the notebook was discovered in Mosley's home eight months after the original search warrant was executed. Counsel vigorously cross-examined Mosley about the notebook and objected to its admission. On direct appeal to the supreme court, Myers challenged the admission of the notebook into evidence and alleged ineffective assistance of counsel during the guilt phase of the trial. The issue regarding the chain of custody of Mosley's notebook was cognizable and could have been raised on direct appeal to the supreme court and is therefore barred by res judicata. *See State v. Dickason*, 5th Dist. Stark Case No. 1996CA00423, 1997 Ohio App. LEXIS 3241 (July 7, 1997). The trial court did not err in dismissing Ground 17.

{¶ 115}  Myers' sixth assignment of error is overruled.

**4.  Ineffective Assistance of Counsel during the Penalty Phase**

{¶ 116}  Assignment of Error No. 5:

{¶ 117}  THE TRIAL COURT ERRED, AND DENIED MYERS DUE PROCESS AND AN ADEQUATE CORRECTIVE PROCESS, WHEN IT SUMMARILY DISMISSED, UNDER R.C. 2953.21(C) AND RULE 12, MYERS' CLAIMS THAT HIS TRIAL COUNSEL RENDERED CONSTITUTIONALLY DEFICIENT PERFORMANCE IN THE SENTENCING PHASE OF HIS CAPITAL TRIAL (GROUNDS 19-45, 49), WITHOUT ALLOWING DISCOVERY OR AN EVIDENTIARY HEARING, AND IN FAILING TO GRANT RELIEF ON THESE MERITORIOUS IAC CLAIMS.

{¶ 118}  Myers argues that the trial court erred in summarily dismissing Grounds 19 through 45, all of which allege several instances of ineffective assistance of counsel during the penalty phase of the trial.  Specifically, Myers argues that counsel was ineffective during the penalty phase of the trial because he failed to (1) conduct a competent mitigation investigation and consult with and hire a competent mitigation specialist in a timely fashion, (2) present the testimony of expert witnesses regarding Myers' youth and psychological history, (3) present expert testimony regarding the science on adolescent brain development, and (4) present the testimony of numerous witnesses who would have testified about Myers' background, family history, mental health, education, and relationships with others.  Myers argues that defense counsel's primary mitigation strategy was that Myers should not receive a punishment harsher than the life sentence without parole imposed on Mosley.  Myers avers that had defense counsel's focus been broader and include the testimony of experts and other witnesses, he would not have been sentenced to death.

{¶ 119}  The trial court dismissed the grounds for relief, finding that (1) the failure to

call witnesses is trial strategy that does not raise to a constitutional violation, (2) a PCR petition is not a vehicle to substitute another trial strategy for one that failed, (3) defense counsel did argue Myers' youth in mitigation and the trial court instructed the jury that youth was a mitigating factor, and (4) defense counsel's failure to present the testimony of an expert in adolescent brain development, and his decision to consult with but not call a psychology expert to the stand and instead rely on arguing that Myers' sentence should not be harsher than that of Mosley was trial strategy.

{¶ 120} Myers' foregoing claims of ineffective assistance of counsel during the penalty phase of the trial were also the basis for his motions for discovery and why he argues the trial court erred in denying his motions for discovery under his second and third assignments of error. As pertinent here, the trial court denied the discovery motions as follows:

> This is not a case where the defense did not seek the assistance of an investigator, mitigation expert and mental health expert. Clearly, a decision by trial counsel not to even have these valuable tools available to him while defending a capital murder case can never be a tactical, strategic decision. However, the decision of whether or not to use these tools or how to use them, as a matter of strategy or in the context of marshalling resources, is the cornerstone in building a proper legal defense.

> Petitioner has made allegations that his attorneys and mitigation specialist were ineffective and did not properly investigate and prepare a defense. In support of this claim, he has provided affidavits and documentary evidence concerning their performance. However, petitioner has made no specific representation about what he expects to learn in a deposition of [lead defense counsel, co-counsel and/or the mitigation specialist]. Both [lead counsel and the mitigation specialist] provided affidavits explaining what they knew, what they did, and why they did it. The fact that an attorney may look back in a deposition or otherwise, with 20/20 hindsight, and question or revisit his trial strategy **after** the jury has rendered its verdict provides no real insight to the Court. Further, the fact that [lead counsel] may have limited his mitigation strategy to what he believed to be the strongest and most compelling arguments does not support conducting discovery on this issue. * * *

In short, the petitioner has not established good cause to conduct discovery with respect to the defense team, including the attorneys.

{¶ 121} During the penalty phase of the trial, defense counsel presented the testimony of Myers' father, mother, and younger brother Bryce. All three testified about Myers' family history and background, including the breakup of the family and the parents' divorce following the mother's affair with a coworker and resultant pregnancy. They further testified about Myers' close bond with his siblings and how he was a very good mediator and mentor for his stepsiblings. Myers' mother testified that as a child, Myers tested gifted in several areas, was a talented piano player, and had designed a business card for himself in sixth grade. However, she started seeing changes in Myers when he was 14 years old. After she discovered Myers had been cutting himself and shooting his legs with a pellet gun, he was hospitalized for five days at Kettering Hospital Youth Services. Myers' mother testified that Myers was initially diagnosed with bipolar disorder and upon discharge, was prescribed medications and weekly therapy with a psychologist. However, Myers discontinued both when he began living with his father later that year. Defense counsel introduced photographs of Myers and his family, the business card he had designed for himself, his letters to his family during his incarceration, the records of his hospitalization at Kettering Hospital, and his gifted test results when he was in fifth grade. The Kettering Hospital records show that Myers was hospitalized as a result of taking 20 Benadryl tablets and that he was initially diagnosed with "depressive disorder not otherwise specified versus bipolar disorder most recent depressed; substance induced mood disorder; over-the-counter drug abuse." Myers was ultimately diagnosed with "depressive disorder, not otherwise specified. Rule out bipolar disorder."

{¶ 122} Myers made an unsworn statement, telling the jury that he was sorry "this

happened" and wished he "could go back in time and stop this before it even happened," and that the death penalty would not hurt him and would only cause more pain and suffering to innocent people such as his parents and siblings. Myers asked the jury to spare his life and give him a chance to become a better person.

{¶ 123} In closing argument, defense counsel stressed Myers' good qualities and the positive influence he could have in his siblings' lives, acknowledged there had been "bumps in the road," such as issues with Myers' family, "his mental health a little bit," and his cutting and shooting himself with the pellet gun, and asked the jury to consider Myers' age, the love of his family, and the Kettering Hospital records. Overall, defense counsel focused on Mosley's plea agreement and resulting life sentence, telling the jury that it was the most important mitigating factor in the case and that Myers should not be punished more than Mosley who was the one who actually killed Back.

{¶ 124} Grounds 22 through 43 allege that counsel was ineffective because he failed to present or "fully" present the testimony of numerous witnesses who would have testified about Myers' background, family history, mental health, education, and relationships with others. In support of this claim, Myers attached 22 affidavits from relatives, friends, acquaintances, and former educators to his PCR petition. Of those witnesses, only three testified at the penalty phase, to wit, Myers' parents and his brother Bryce.

{¶ 125} It is well established that a "defense decision to call or not call a mitigation witness is a matter of trial strategy. * * * Debatable trial tactics generally do not constitute ineffective assistance of counsel." *Graham*, 2020-Ohio-6700 at ¶ 139. The Ohio Supreme Court has further stated that trial counsel is not ineffective for failing to call all available family members. *State v. McGuire*, 80 Ohio St.3d 390, 399, 1997-Ohio-335. Furthermore, "[a]dditional mitigating evidence that is 'merely cumulative' of that already presented does not undermine the results of sentencing." *State v. Herring*, 142 Ohio St.3d 165, 2014-Ohio-

5228, ¶ 117. Instead, "the new evidence * * * must differ in a substantial way – in strength and subject matter – from the evidence actually presented at sentencing." *Id.*

{¶ 126} Upon reviewing the witnesses' affidavits, we find that the trial court did not err in dismissing Grounds 22 through 43. Although the 19 individuals who did not testify may have provided a more disinterested account of Myers' family, their testimony to a large extent was cumulative to and did not differ in substantial way from the testimony of Myers' parents and his brother Bryce. *See State v. Twyford*, 7th Dist. Jefferson No. 98-JE-56, 2001 Ohio App. LEXIS 1443 (Mar. 19, 2001). Likewise, the affidavits of Myers' parents and brother did not differ in substantial way from their testimony at the penalty phase.

{¶ 127} Grounds 19 and 20 allege that counsel was ineffective because he failed to consult with and hire a competent mitigation specialist in a timely fashion.

{¶ 128} In March 2014, lead defense counsel moved to employ his wife, a licensed attorney with experience defending capital cases, as the mitigation specialist. The trial court balked at the request due to the family relationship and denied the motion. Lead counsel did not seek assistance from another mitigation specialist until he contacted the Ohio Public Defender's Office in May 2014. However, the public defender's office did not have the resources to provide a mitigation specialist. Unable to find another mitigation specialist, lead counsel moved the trial court to reconsider its previous denial. The trial court held a hearing on the motion for reconsideration on June 4, 2014. Thereafter, the trial court appointed lead counsel's wife as the mitigation specialist. The trial court's decision noted that counsel's wife had "already undertaken some mitigation work in the case, including meeting with the family of the Defendant[.]"

{¶ 129} The jury found Myers guilty on all counts and specifications on October 2, 2014. The penalty phase was held on October 6, 2014. In support of his PCR petition, Myers attached the affidavits of lead counsel and the mitigation specialist. Both affidavits

state that during the three-day weekend between the jury verdict and the penalty phase, lead counsel and the mitigation specialist met with and interviewed Myers' mother and two of his siblings at the mother's home. That same weekend, they also met with and interviewed Myers' father and stepmother at their home. The affidavits of Myers' parents and stepmother corroborated that the interviews took place that weekend. Myers' stepmother stated the interview was short. Myers' mother stated that her interview lasted about one hour and one half and that she gave photographs to the mitigation specialist at another time and "spent another hour to an hour and a half with her."

{¶ 130} The Ohio Supreme Court has held that capital defendants "[do] not have a constitutional right to a mitigation specialist or a right to an effective one." *Herring*, 2014-Ohio-5228 at ¶ 113, citing *McGuire*, 80 Ohio St.3d at 399 (no requirement for counsel to hire mitigation specialist in capital case); *Drummond*, 2006-Ohio-7078 at ¶ 69 (a mitigation specialist is not a requirement for effective assistance of counsel). The trial court noted that the mitigation specialist "was a trained attorney who has handled a number of capital cases and therefore has the ability to determine what evidence is effective in the [penalty] phase." The trial court did not err in dismissing Grounds 19 and 20.

{¶ 131} Grounds 21, 44, and 45 generally challenge counsel's failure to conduct a comprehensive investigation into Myers' background and counsel's failure to present effective mitigation evidence during the penalty phase of the trial. Specifically, Grounds 21, 44, and 45 allege that counsel was ineffective because he failed to present the expert testimony of clinical forensic psychologist Dr. Bobbie Hopes, failed to consult with and present an expert in adolescent brain development, and failed to effectively present youth as a mitigation factor.

{¶ 132} In support of his PCR petition, Myers submitted affidavits and reports from several experts related to adolescent brain development and expressing opinions based

upon their evaluation of Myers and his mental health and social records. The evidence submitted by Myers generally reflects that individuals of his age are prone to risk taking, peer influence, and impulsivity more akin to adolescents than adults. Myers argues that this evidence established substantive grounds for relief and he is therefore entitled to discovery and an evidentiary hearing on his PCR petition. The state argues that the evidence was not presented as a matter of trial strategy because it was in conflict with defense counsel's mitigation strategy to emphasize Myers' good qualities and was cumulative to evidence presented at the penalty phase.

{¶ 133} In his direct appeal to the Ohio Supreme Court, Myers argued ineffective assistance of counsel in the penalty phase for failure to present any expert testimony. Specifically, Myers asserted that defense counsel "should have adduced expert testimony to explain the meaning of his self-harming behavior in his early teens and how brain development affects the decision-making of young people." *Myers*, 2018-Ohio-1903 at ¶ 198. The supreme court rejected Myers' claim on the ground that "nothing in the record shows what such expert would have said in the penalty phase[.] Thus, Myers has not demonstrated prejudice from missing such testimony." *Id.* The supreme court further found, "At trial, the defense requested and received funds to hire a consulting psychologist. The psychologist the defense chose was appointed, but the record does not show what she told Myers's counsel regarding her conclusions. Hence, there is nothing to show deficient performance by counsel." *Id.* at ¶ 199.

{¶ 134} In a capital case, "[d]efense counsel has a duty to investigate the circumstances of his client's case and explore all matters relevant to the merits of the case and the penalty, including the defendant's background, education, employment record, mental and emotional stability, and family relationships." *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, ¶ 219. Defense counsel has a duty to make reasonable

investigations or to make a reasonable decision that makes particular investigations unnecessary. *State v. Johnson*, 24 Ohio St.3d 87, 89 (1986). Counsel's "investigations into mitigating evidence 'should comprise efforts to discover all reasonably available mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor.'" *Wiggins v. Smith*, 539 U.S. 510, 524, 123 S.Ct. 2527 (2003), citing American Bar Association, *ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases*, Section 11.4.1(C), 93 (1989). Given the severity of the potential sentence and the reality that the life of a capital defendant is at stake, it is only after a full investigation of all the mitigating circumstances that counsel can make an informed, tactical decision about which information would be most helpful to the client's case. *Johnson* at 90. "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.] However, a failure to investigate, especially as to key evidence, must be supported by a reasoned and deliberate determination that investigation was not warranted." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir.1994). "An attorney's failure to reasonably investigate the defendant's background and present mitigating evidence to the jury at sentencing can constitute ineffective assistance of counsel." *Pickens* at ¶ 219.

{¶ 135} Myers was examined by Dr. Barzman for purposes of the PCR petition and his report is attached to the petition. Myers was also examined by Dr. Daniel Davis, a forensic psychologist, and his report is attached to the PCR petition. In his report, Dr. Barzman opined that Myers' mental health history, which included significant depressive and manic symptoms, was consistent with bipolar disorder which is associated with increased impulsivity and a focus on immediate gratification.

{¶ 136} In his report, Dr. Davis stated that the symptoms Myers experienced in high school were associated with bipolar disorder and that he was not fully neurologically

developed at the time of his crimes and sentencing. Dr. Davis further stated that the trial court and jury were deprived of pertinent psychological information specific to Myers and general psychological research specific to youthful and capital offenders, evidence that would have been extremely helpful to understand Myers' actions and demeanor. In particular, Dr. Davis noted that while Myers' youth was clearly evident at trial, the crimes took place when Myers was still developing neurologically and psychologically, however "there was no specific testimony as to the considerable scientific literature concerning neurological development in late adolescents and young adults." Dr. Davis also noted Myers' apparent lack of remorse for his crimes at sentencing but stated that scientific literature shows that an apparent lack of remorse is not indicative of anything atypical in adolescent males and is typically mistaken as one of the "signs of the development of a psychopathic personality when they are, in fact, transient features of adolescent development." Dr. Davis' report continued,

> Further, abused and neglected children, such as Austin demonstrate a limited range of emotions as a way to cope with very stressful home environments. These research findings apply specifically to Austin. He was raised in a highly neglectful environment. He was at the time of his sentence still in the commonly accepted development stage of late adolescence. Neither the trial court nor jury had this critically important research presented to them[.]

{¶ 137} In support of his PCR petition, Myers also submitted the affidavits of his lead defense counsel and Dr. Hopes. Lead counsel's affidavit details what he did and did not do. As pertinent here, lead counsel stated he believed "that everyone close to the process thought that [Myers] would receive a life sentence regardless of the trial phase result, based upon Mosley's plea deal having been the principal offender in the aggravated murder of Justin Back." Counsel's affidavit further stated,

> I did not consider requesting funding for, or hiring, a youth/adolescent expert to help explain issues, including

youth/adolescent brain development, to the jury.

> Even though we did retain a psychologist, Dr. Bobbie Hopes, for mitigation, Dr. Hopes told me that she would not be able to provide anything for the jury except for a timeline of Austin's life, something which Dr. Hopes believed Austin's mother could provide and that it would be better if it came from her. Given her statements to me, I was concerned that if Dr Hopes presented this information to the jury, it would just be seen as "psychobabble."

> When Austin's mother * * * did not effectively provide such a timeline as I had anticipated and that [the mitigation specialist] and I had worked with her on, I did not think to then call Dr. Bobbie Hopes to the stand to testify.

{¶ 138} Lead counsel's averments were contradicted by Dr. Hopes' affidavit. Dr. Hopes evaluated Myers three times in August 2014, for a total of six hours, for purposes of death penalty mitigation. Dr. Hopes averred that she provided lead counsel with a report in which she expressed the opinion that Myers' age, his history of childhood physical abuse, including his history of being diagnosed and treated for depression, and his history of self-mutilation were mitigation factors. Following Myers' conviction for aggravated murder, lead counsel called Dr. Hopes and told her he did not intend to use her as a mitigation expert. Dr. Hopes suggested that Myers' age and relevant research on adolescent brain development were strong mitigation factors but was told by lead counsel that information about youth had come out during jury selection. Dr. Hopes averred that she was willing and prepared to testify about age and adolescent brain development research. Dr. Hopes further averred that she never advised lead counsel that she could only present a timeline of Myers' life and that she never discussed a timeline with counsel.

{¶ 139} As stated above, "[i]n a petition for post-conviction relief, which asserts ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness." *Jackson*, 64

Ohio St.2d 107 at syllabus. In order to secure an evidentiary hearing on a PCR petition asserting ineffective assistance of counsel, a petitioner need not prove counsel rendered ineffective assistance. Rather, the PCR petition only needs to set forth sufficient operative facts to establish substantive grounds for relief.

{¶ 140} Upon reviewing the reports of Drs. Barzman and Davis and the affidavits of Dr. Hopes and lead defense counsel, we find that Myers has provided evidentiary documents setting forth sufficient operative facts to warrant an evidentiary hearing on his PCR petition regarding his claim that counsel was ineffective for failing to present expert testimony at the penalty phase of the trial.

{¶ 141} Defense counsel has the affirmative duty to investigate mitigating evidence. *State v. Herring*, 7th Dist. Mahoning No. 08-MA-213, 2011-Ohio-662, ¶ 55. Defense counsel "can make the decision to forego the presentation of evidence, but only after a full investigation." *Id.* It is only after a full investigation of all the mitigating circumstances that counsel can make an informed, tactical decision about which information would be most helpful to their client's case. *Johnson*, 24 Ohio St.3d at 89.

{¶ 142} Lead counsel's averment that he did not consider requesting funding for, or hiring, a youth/adolescent expert to explain issues regarding adolescent brain development to the jury fails to indicate counsel's motivation and instead suggests that counsel's failure to present such expert testimony was not the product of an informed, tactical decision. That is, counsel's averment shows he did not engage into a reasoned and careful consideration of such expert testimony before ultimately rejecting it. The same can be said about counsel's failure to have Dr. Hopes testify as an expert witness at the penalty phase. While counsel averred in his affidavit that Dr. Hopes did not testify because she could only provide a timeline of Myers' life, this averment was explicitly contradicted by Dr. Hopes' affidavit. There is little evidence documenting the extent of defense counsel's reasoning for his

investigation and decision making regarding expert testimony mitigation evidence.

{¶ 143} The state argues that mitigation evidence regarding Myers' dysfunctional family, self-mutilation, and mental health issues such as childhood depression and bipolar disorder, was presented through the testimony of his mother at the penalty phase, and thus, much of the psychological testimony that Drs. Hopes, Barzman, and Davis could have presented would have been cumulative. However, Myers' mother's testimony was much more limited on the issue. Myers' mother testified that the deterioration of her marriage did not seem to affect Myers, that she had not noticed Myers' self-mutilation, and that she believed Kettering Hospital initially diagnosed Myers with bipolar disorder. There was no testimony regarding Myers' childhood depression. Furthermore, Myers' mother is not qualified to provide the expert testimony necessary to contextualize the factors above.

{¶ 144} The state next argues that presenting this expert testimony at the penalty phase would have been inconsistent with defense counsel's mitigation theory emphasizing Myers' good qualities and the positive influence he could have in his siblings' lives. Thus, the state asserts, defense counsel's decision not to present such testimony was trial strategy which should not be second-guessed.

{¶ 145} However, lead counsel's affidavit does not advance this as the reason he did not present Dr. Hopes' expert testimony at the penalty phase. Lead counsel avers only that he did not call Dr. Hopes as a witness because she could only provide a timeline of Myers' life, an averment explicitly contradicted by Dr. Hopes' affidavit. Whether it was defense counsel's mitigation strategy to emphasize Myers' qualities, which counsel's affidavit does not suggest, it is not apparent why such strategy excludes a parallel strategy to contextualize Myers' youth in light of the science on adolescent brain development. As her affidavit clearly indicates, Dr. Hopes was prepared and available to testify about these issues and advised lead counsel on the eve of the penalty phase that Myers' age and

relevant research on adolescent brain development were strong mitigation factors. And while a decision by defense counsel to present only positive mitigation can be a sound trial strategy, counsel's decision to pursue a positive-mitigation theory can properly be made only after counsel has conducted a full mitigation investigation. *Herring*, 2014-Ohio-5228 at ¶ 90.

{¶ 146} The state further asserts that defense counsel did argue that Myers was only 19 years old at the time of the crimes. Counsel did briefly ask the jury to take Myers' age into consideration as a mitigation factor. However, counsel never developed the significance of Myer's youth as a mitigating factor.

{¶ 147} In light of the foregoing, we find that the trial court erred in summarily dismissing Grounds 21, 44, and 45 of the PCR petition without an evidentiary hearing. The trial court further erred in finding that Myers did not establish good cause to conduct discovery regarding his claim counsel was ineffective at the penalty phase in failing to present expert testimony on adolescent brain development in conjunction with Myers' age and mental health issues. Myers' claims are "neither patently frivolous nor palpably incredible" and "the discovery he requests" in the form of depositions of the defense team is "limited and reasonably calculated to lead to evidence in support of his claim[.]" *Hill*, 2007 U.S. Dist. LEXIS 71975 at *31-32; *Johnson v. Bobby*, S.D.Ohio No. 2:08-cv-55, 2010 U.S. Dist. LEXIS 103351 (Sept. 30, 2010); *Stallings v. Bradshaw*, N.D.Ohio No. 5:05CV0722, 2006 U.S. Dist. LEXIS 97540 (Feb. 28, 2006).

{¶ 148} We therefore remand this case for the trial court to conduct an evidentiary hearing on Grounds 21, 44, and 45 of the PCR petition which allege ineffective assistance of counsel at the penalty phase for failing to present expert testimony on adolescent brain development in conjunction with Myers' age and mental health issues. The advantages that an evidentiary hearing on a PCR petition based on ineffective assistance of counsel

can provide a trial judge are well established:

> The trial judge can delve into the motivation or reasoning of trial counsel through trial counsel's testimony. The court can hear the testimony of witnesses that were never called to testify at the original trial, and can determine the worth of their testimony as well as the witnesses' credibility. The trial judge can ask what the counsel knew, when he knew it, and whether a mistake was not strategic, but was instead careless. As here, in a postconviction hearing, a judge can hear testimony about what evidence was made available to trial counsel and when it was made available. A trial court in a postconviction proceeding thus plays a unique role in the consideration of ineffective assistance of counsel claims. It is the only court that actually hears testimony on that issue.

*State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 54.

{¶ 149} Myers' fifth assignment of error is sustained. To the extent noted above, Myers' second and third assignments of error are sustained in part.

### 5. Cumulative Errors

{¶ 150} Assignment of Error No. 10:

{¶ 151} THE TRIAL COURT ERRED, AND DENIED MYERS DUE PROCESS AND AN ADEQUATE CORRECTIVE PROCESS, WHEN IT SUMMARILY DISMISSED, UNDER R.C. 2953.21(C), MYERS' CLAIM OF CUMULATIVE ERROR (GROUND 60), WITHOUT ALLOWING DISCOVERY OR AN EVIDENTIARY HEARING AND IN FAILING TO GRANT RELIEF.

{¶ 152} Myers argues the trial court erred in dismissing Ground 60 which alleges cumulative errors. We include under this assignment of error Myers' claims that the trial court erred in dismissing Grounds 18 and 49, which allege cumulative effect of the denial of effective assistance of counsel during the guilt and penalty phases of the trial (as initially argued in the fifth and sixth assignments of error). Under the doctrine of cumulative errors, a judgment may be reversed if the cumulative effect of errors deprives a defendant of a fair trial even though each of the instances of trial-court error does not individually constitute

- 52 -

cause for reversal. *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 140. Given our resolution of Myers' second, third, and fifth assignments of error, this assignment of error is moot. *See State v. Stein,* 3d Dist. Logan No. 8-17-39, 2018-Ohio-2621, citing App.R. 12(A)(1)(c).

## III. CONCLUSION

{¶ 153} In light of our resolution of Myers' second, third, and fifth assignments of error, the trial court's judgments denying Myers' motions for discovery and his PCR petition regarding his claim of ineffective assistance of counsel for failing to present expert testimony at the penalty phase of the trial are reversed and the matter is remanded for further proceedings consistent with this opinion. Specifically, on remand, the trial court shall permit discovery, conduct an evidentiary hearing, and rule on Grounds 21, 44, and 45 of the PCR petition.

{¶ 154} Judgment affirmed in part, reversed in part, and remanded.

HENDRICKSON, P.J., and S. POWELL, J., concur.